400 A.2d 160

**COMMONWEALTH of Pennsylvania**

**v.**

**James WESTBROOK, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 9, 1979.

Decided March 16, 1979.

Reargument Denied May 3, 1979.

536

Richard R. Lunenfeld, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., James Garrett, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, James Westbrook, was convicted in 1972 in a nonjury trial of aggravated robbery. Post-verdict motions were denied and appellant was sentenced to two and one-half to seven years' imprisonment. No direct appeal was taken from the judgment of sentence.

In 1974, appellant filed a petition under the Post-Conviction Hearing Act, alleging, *inter alia*, that he had been

denied the right to direct appeal. Following four hearings, the Court of Common Pleas of Philadelphia granted appellant the right to file an appeal *nunc pro tunc* in the Superior Court and denied appellant's PCHA petition in all other respects.[1] An appeal was filed with the Superior Court, which affirmed the judgment of sentence. *Commonwealth v. Westbrook*, 245 Pa.Super. 174, 369 A.2d 350 (1976). Appellant then filed a petition for allowance of appeal, which we granted, and this appeal followed.

Appellant argues that he was denied effective assistance of counsel because of a conflict of interest. The facts are as follows. On May 23, 1972, one Robert Really was beaten and robbed by four individuals in South Philadelphia. A week later, Really saw appellant standing in a parking lot. He found a patrolman who, on the basis of Really's identification, arrested appellant.

At trial, appellant attempted to show that his brother, Alphonso, who closely resembled appellant, had robbed Really. Appellant's mother testified that Alphonso had admitted to her that he had committed the crime for which appellant had been charged. Scott Wilson, a detention center social worker, testified that he had interviewed both appellant and Alphonso. At the interview, appellant accused Alphonso of the Really robbery and Alphonso offered no protest.

Detective Anthony Bonsera of the Philadelphia Police Department testified that he had been present after appellant's preliminary hearing when the court was informed that Alphonso was going to confess to the Really robbery. Detective Bonsera then questioned Alphonso, who refused to admit his alleged involvement. Following this discussion, Detective Bonsera allowed appellant, Alphonso and Mrs. Westbrook to confer in private. Following the trio's conference, Mrs. Westbrook told Detective Bonsera that Alphonso was willing to make a statement. Bonsera began to make arrangements to take Alphonso's statement, but before the statement could be taken, Bonsera was in-

1. For proper procedure, see *Commonwealth v. Webster*, 466 Pa. 314, 353 A.2d 372 (1975).

formed that Alphonso, because of the advice of an unnamed public defender, was again unwilling to give any statement. Since appellant was represented by a public defender, he claims he was denied the effective assistance of counsel because of a conflict of interest when another public defender advised Alphonso not to make a statement. We agree and reverse.[2]

As we stated in *Commonwealth v. Breaker,* 456 Pa. 341, 344–45, 318 A.2d 354, 356 (1974), when summarizing the law on conflicts of interest:

"Our dual representation cases make several principles clear. First, '[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm may result, rather than that such harm *did* result, furnishes the appropriate criterion.' . . . Second, a defendant must demonstrate that a conflict of interest actually existed at trial, because 'dual representation alone does *not* amount to a conflict of interest.' . . . Third, '[t]o make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, . . . but must at least show the possibility of harm . . . .' . . . Fourth, appellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, 'that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.' " (Emphasis in original.) (Citations and footnote omitted.)

2. Because of our disposition of this issue, we need not consider the following issues:

"1. Did not the district attorney commit serious error, requiring a mistrial, when he indirectly informed the trial judge during the trial that defendant had previously been convicted of another criminal offense?

"2. Was not the defendant represented by incompetent counsel at his trial?

"3. Was not the defendant inadequately advised of his right to a jury trial?"

The majority of the Superior Court distinguished the principles enunciated in *Breaker* and found no dual representation because appellant and his brother Alphonso were neither co-defendants nor were they tried separately for the same offense. The court further found that the only harm to appellant came about when a public defender advised Alphonso not to make a statement. As the Superior Court majority stated: "The only harm resulting from the alleged conflict took place long *prior to appellant's trial* and on the facts, no conflict existed *at trial* and thus no possible threat to appellant's interests was present." *Commonwealth v. Westbrook, supra,* 456 Pa. at 182, 318 A.2d at 354 (emphasis supplied). We believe, however, that the Superior Court gave entirely too narrow a reading to the *Breaker* principles, thereby emasculating the protections involved therein. Applying *Breaker,* we find that appellant was denied the effective assistance of counsel because of a conflict of interest.

1. *Representing more than one defendant.*

In the instant case, appellant was represented by the Public Defender Association of Philadelphia at the time of the preliminary hearing. At trial, appellant attempted to show that his brother Alphonso committed the robbery.

Testimony in the record reveals that Alphonso, at the behest of his mother, indicated a willingness to accept criminal responsibility for the robbery. Alphonso's intention was confirmed by Scott Wilson, a social worker, and Detective Bonsera of the Philadelphia Police Department. Prior to Alphonso's admitting criminal responsibility, however, an unnamed public defender informed him that it was in his best interests not to testify.

In *Commonwealth v. Via,* 455 Pa. 373, 316 A.2d 895 (1974), we held that members of the public defender's office would be considered members of the "same firm" for purposes of presenting a claim of ineffective assistance of trial counsel. The rationale of *Via,* as it concerned public defenders being considered as one law firm, is equally applicable to

the question of conflict of interest in multiple representations.

Having determined that the Public Defenders Association of Philadelphia is a "law firm," it is clear that two members of the same firm are prohibited from representing multiple clients with inconsistent defenses.

Section 3.5(b) of the American Bar Association Standards Relating to Defense Function—Conflict of Interest, provides:

"Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation." [3]

2. *A defendant must demonstrate that a conflict of interest actually existed at trial.*

The Superior Court relied upon the fact that the public defender's office only participated in jointly representing appellant and his brother Alphonso at a preliminary hearing and not at trial. That court, therefore, found the second *Breaker* requirement was not met.

We believe that the existence of dual representation and the possible conflict of interest does not depend upon when the possible conflicting representation is performed (trial or pretrial), but rather that advice adverse to a client's interest was given. Preliminary hearings are an important and vital part of the Pennsylvania criminal justice

**3.** The discussion *infra* will resolve the language "Except for preliminary matters such as initial hearings or applications for bail."

system, requiring criminal defendants to be advised of their right to counsel. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), and Pa.R.Crim.P. 141(c).

This recognition of the importance of the right to counsel would be diluted if that counsel or his associates were burdened by dual representation possibly rising to the level of conflict of interest. As such, we believe that in analyzing a conflict of interest in pretrial proceedings, each case must be examined with reference to its facts. Under the facts of this case, we believe that dual representation occurred during a critical step in Pennsylvania criminal procedure, especially in light of the possible complete exculpation of appellant by Alphonso's confession.

    3.  *Appellant need not show that actual harm resulted, but must at least show the possibility of harm.*

and

    4.  *Appellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, that he had a defense inconsistent with that advanced by the other client.*

The third and fourth principles of *Breaker* will be treated together.

Appellant had clearly demonstrated the "possibility of harm" by showing that his defense, i. e., Alphonso, his brother, was the actual criminal party, was inconsistent and conflicting with Alphonso's counseled decision to exercise his Fifth Amendment rights.

The Commonwealth argues that reversal is not required because even if his interests had been prejudiced at the preliminary hearing stage, obtaining different counsel could not have improved appellant's chances at trial. We believe, however, that the Commonwealth's response begs the question. As the Supreme Court stated in *Glasser v. United States*, 315 U.S. 60, 69–70, 62 S.Ct. 457, 464, 465, 86 L.Ed. 680 (1942):

"The guarantees of the Bill of Rights are the protecting bulwarks against the reach of arbitrary power. Among those guarantees is the right granted by the Sixth Amendment to an accused in a criminal proceeding in a federal court 'to have the assistance of counsel for his defense.' 'This is one of the safeguards deemed necessary to insure fundamental human rights of life and liberty,' and a federal court cannot constitutionally deprive an accused, whose life or liberty is at stake, of the assistance of counsel. *Johnson v. Zerbst,* 304 U.S. 458, 462, 463, 58 S.Ct. 1019, 82 L.Ed. 1461. Even as we have held that the right to the assistance of counsel is so fundamental that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing, and the failure of that court to make an effective appointment of counsel, may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment, *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, so are we clear that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired."

Further, our cases hold that *actual* harm need not be proven, but rather one must only show the *possibility* that harm may have resulted. *Commonwealth v. Wilson,* 429 Pa. 458, 240 A.2d 498 (1968). The tenor of these cases make it clear that once a conflict of interest arises, a criminal defendant is entitled to be represented by counsel unburdened by a conflict. As appellant was represented by counsel burdened by a conflict, he must be given a new trial.

Judgment of sentence reversed and new trial granted.

EAGEN, C. J., concurs in the result.

ROBERTS, J., filed a concurring opinion.

NIX, J., files a dissenting opinion.

LARSEN, J., files a dissenting opinion.

ROBERTS, Justice, concurring:

I concur in the result. The record establishes that appellant might have been exculpated by proof that his brother Alphonso was guilty of the crime of which appellant was accused. An attorney effectively representing Alphonso might well be obliged to give Alphonso advice inconsistent with appellant's best defense. It is thus clear that the interests of the brothers were directly opposed and that representation of both by the same counsel, the Philadelphia Public Defenders, constituted a conflict of interest raising the possibility of prejudice to appellant. Although it is immaterial whether appellant was actually harmed by advice to Alphonso, e. g., *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512, 519–520 (3d Cir. 1979),\* the record supports the conclusion stated by the plurality that a Public Defender advised Alphonso not to confess to the crime despite his willingness to do so.

Notwithstanding the Commonwealth's assertions, any conflict in the representation of appellant and his brother are not cured by the fact that Alphonso has never been prosecuted for this same crime. The Commonwealth never claimed that both brothers, rather than only one, were involved in the criminal activity with which appellant was charged. Thus it was clear from the outset that if one brother were found guilty, the other would be exculpated

---

\* *United States ex rel. Sullivan v. Cuyler* involved the representation by two attorneys of three defendants accused of the murders at the Teamsters' Local 107 in Philadelphia in 1966. See *Commonwealth v. Sullivan*, 446 Pa. 419, 286 A.2d 898 (1971) (affirming conviction on an equally divided court); id., 472 Pa. 129, 371 A.2d 468 (1977) (same case on collateral review). Sullivan was tried first and no defense was made. The other two defendants were subsequently acquitted in separate trials.

The court of appeals granted relator relief holding that both attorneys together represented Sullivan and the other defendants. The court of appeals rejected the theory that because one attorney primarily represented Sullivan and the other primarily represented the remaining defendants no dual representation took place.

and not brought to trial. That any advice given to Alphonso might have been successful in protecting him does not negate, but rather emphasizes, the existence of a conflict whose potential effects might have continued throughout appellant's trial.

In accord with our prior decisions, appellant was unequivocally entitled to effective trial counsel unburdened by any conflict. E. g., *Commonwealth v. Breaker*, 456 Pa. 341, 318 A.2d 354 (1974); see *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The plurality correctly concludes that a Public Defender undertook to give advice to Alphonso. Thereafter, representation of appellant by a Public Defender was ineffective. Appellant's conviction must be reversed and the case must be remanded for a new trial at which appellant may be represented by effective counsel unburdened by any conflict.

NIX, Justice, dissenting:

While I agree with the majority's conclusion that there was dual representation in the instant case, I fail to see how a new trial, or any number of new trials, will remedy any possible prejudice caused by that dual representation. At appellant's first trial, the circumstances surrounding Alphonso's purported willingness to confess to the crimes and his subsequent refusal to do so were fully disclosed to the jury. Assuming that Alphonso persists in his refusal to incriminate himself, appellant will be in substantially the same position at his new trial as he was at his first trial, and no doubt appellant will once again introduce the same evidence concerning the above circumstances. The grant of a new trial is, therefore, a futile gesture which wastes precious judicial resources.

I dissent.

LARSEN, Justice, dissenting.

I dissent. The rationale for the "same firm" concept being applied to the Public Defender's office in ineffective assistance of counsel cases is based upon the conflict be-

tween the loyalties to one's client and the loyalties to one's associates:

> We will not view the failure to raise a claim of incompetency as a waiver where an individual in the subsequent proceeding is represented by the same counsel or one of his associates. *The law will not assume that counsel has advised his client of his inadequacies or those of his associates.* Commonwealth v. Via, 455 Pa. 373, 377, 316 A.2d 895, 898 (1974). (emphasis added)

No such conflict exists when two attorneys from a Public Defender's office engage in the simultaneous representation of clients with inconsistent defenses. These situations do not require an attorney to impugn the competence or performance of his associates and, therefore, do not bring the loyalties to one's associates into conflict with the loyalties to one's clients. Thus, I would affirm the judgment of sentence.