586 A.2d 369

COMMONWEALTH of Pennsylvania, Appellee,

v.

Guy Homer GLASS, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 28, 1990.

Decided Feb. 4, 1991.

330

Samuel Gold, Altoona, for appellant.

William J. Haberstroh, Dist. Atty., Donald E. Speice and David C. Gorman, Asst. Dist. Attys., Hollidaysburg, for appellee.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, by allowance, from a memorandum opinion and order of the Superior Court which affirmed an order of the Court of Common Pleas of Blair County denying a petition for habeas corpus relief. The petition was filed by the appellant, Guy Homer Glass, seeking discharge from criminal liability on the ground that his constitutional rights to a speedy trial and due process were violated by a fifty-one month delay between conviction and sentencing. Appellant was awarded a new trial by the Superior Court, on the basis that representation by trial counsel was flawed by a conflict of interest.[1] The sole issue on appeal is whether habeas corpus relief should have been granted.

This case arose from an incident in which appellant and several companions made an unprovoked attack upon a

---

1. Appellant's trial counsel was associated with the same public defender's office as was counsel for a co-defendant, and this gave rise to the conflict of interest claim.

seventeen year old female. Appellant was convicted of attempted rape, conspiracy, attempted involuntary deviate sexual intercourse, indecent assault, corrupting the morals of a minor, and simple assault.

The fifty-one month delay in sentencing was attributable to the following sequence of events. A verdict finding appellant guilty was entered on June 10, 1983, and post-verdict motions were filed on June 20, 1983. The trial transcript was not filed, however, until March 4, 1986. The delay in filing the transcript was caused by a court reporter, who, although she had promptly transcribed the testimony, neglected to file the transcript. She left her employment with the county in June of 1984, having forgotten about the transcript. As to why she did not file it until March of 1986, she stated that "no one had asked for it or anything or it would have been at their disposal."

After the transcript was filed, trial counsel briefed the post-verdict motions. Briefs were filed on April 4, 1986. Appellant then sought, through a *pro se* petition, to have trial counsel dismissed and new counsel appointed. On April 21, 1986, the petition was granted. The order appointing new counsel provided that supplemental post-verdict motions could be filed *nunc pro tunc*, limited to claims of ineffective assistance of prior counsel. The supplemental motions were filed on June 5, 1986, and, by September of 1986, the motions had been briefed.

Further delay arose in December of 1986, when the trial judge resigned from the bench without having ruled upon the post-verdict motions. On December 14, 1986, the case was reassigned to the president judge, who, in March of 1987 conducted oral arguments, and, on July 22, 1987 denied appellant's post-verdict motions. Just before the post-verdict motions were denied, appellant filed, on July 20, 1987, a *pro se* petition for writ of habeas corpus seeking discharge on the ground that delays in sentencing had infringed his constitutional rights to speedy trial and due process. The petition was denied on August 5, 1987. Another petition for writ of habeas corpus raising the speedy

trial and due process issues was filed, this time by counsel, on August 18, 1987. Nevertheless, a judgment of sentence providing for seven to fourteen years imprisonment was entered on August 31, 1987. The counselled petition for writ of habeas corpus was also denied on that date.

Notices of appeal were timely filed with respect to both the judgment of sentence and the denial of the counselled habeas corpus petition. The appeals were later consolidated.

The Commonwealth contends that the speedy trial issue was not timely presented to the trial court and that it was, therefore, waived. As stated in Pa.R.A.P. 302(a), "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." It cannot be said, however, that the issue of delay in sentencing was not raised in the trial court, for, plainly, it was raised in July and August of 1987 via the petitions for writs of habeas corpus. The Commonwealth argues that it should have been raised at the earliest possible time, i.e., in the supplemental post-verdict motions filed in June of 1986, when appellant's newly acquired counsel was permitted to assert prior counsel's ineffectiveness. Specifically, it is argued that an ineffectiveness claim could have been framed in terms of prior counsel's failure to assert a speedy trial claim or a demand for prompt sentencing. Nevertheless, the very nature of the claimed wrongful delay is such that, even assuming *arguendo* that it *could* have been raised in June of 1986, its constitutional implications grew as the delay lengthened. It is, therefore, to be distinguished from claims of trial error which remain constant in substance and must be raised through timely post-verdict motions. See *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

To require that the speedy trial claim arising from delayed sentencing have been asserted at the earliest conceivable time, through the supplemental post-verdict motions filed in June of 1986 rather than through the subsequent petitions for writs of habeas corpus, would be unwarranted.

It would also encourage the filing of needlessly premature claims. Counsel should not be required to assert speedy trial claims, seeking discharge of defendants, when they do not regard the claims as having attained sufficient substance to warrant relief. It does not follow, however, that they should refrain from requesting prompt sentencing. See discussion infra. Appellant's speedy trial claim was certainly of greater substance in July and August of 1987 than it was in June of 1986. The claim had not, therefore, been waived when it was asserted in 1987 through petitions for writs of habeas corpus.[2]

This Court has firmly established a framework for analysis of cases where delays in sentencing have implicated rights to a speedy trial under the Sixth Amendment and under Article I, § 9 of the Pennsylvania Constitution. *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983); *Commonwealth v. Pounds*, 490 Pa. 621, 627, 417 A.2d 597, 599 (1980). The factors to be considered in such cases were described as follows in *Commonwealth v. Glover*, 500 Pa. at 528, 458 A.2d at 937:

> In determining whether a defendant's constitutional speedy trial right has been violated, it must first be determined whether the delay itself is sufficient to trigger further inquiry. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Jones v. Commonwealth*, 495 Pa. 490, 434 A.2d 1197 (1981). If the delay is sufficient to trigger further inquiry, the reviewing court

**2.** Although an appeal was timely filed from the denial of the counselled petition for writ of habeas corpus, the president judge of Blair County wrote a letter to the Superior Court urging it to dismiss the appeal on the ground that counsel for appellant had not filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The letter informed the Superior Court that an opinion on the habeas corpus issue would not be provided. Upon receiving a copy of this letter, counsel apologized for his oversight and immediately furnished the requested statement of matters complained of on appeal. The opinion later filed by the president judge addressed the post-verdict motions, but not the habeas corpus issue. The Superior Court did not, however, dismiss the appeal. Rather, it addressed the habeas corpus issue on the merits, though suggesting that a waiver of the issue might be deemed from counsel's failure to raise the issue in the supplemental post-verdict motions filed in June of 1986.

must balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial. *Barker v. Wingo,* supra; *Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980).

In the present case, there was nearly a fifty-one month delay between the conclusion of trial and sentencing. Such a delay is certainly more than sufficient to trigger this Court's further inquiry. Indeed, it is an unfortunate commentary upon court-administration practices in Blair County that such a delay could occur. We note that this is one in a series of cases in which inordinate delays have been observed in sentencing procedures in Blair County. See *Burkett v. Cunningham,* 826 F.2d 1208, 1227 (3d Cir.1987) (compilation of cases involving delays in Blair County).

In evaluating the reason for the delay, we stated in *Commonwealth v. Glover,* 500 Pa. at 528, 458 A.2d at 937–38 (citing *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117) that the following guidelines are applicable:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Appellant concedes that there was no deliberate action by the Commonwealth designed to delay his sentencing. The Commonwealth obviously did not cause the court reporter's failure to file a transcript or the trial judge's resignation from the bench. Delays caused by these factors were plainly the result of negligence, inefficiency, or overcrowding in the courts of Blair County. Under *Commonwealth v. Glover,* supra, such delays must nevertheless be

weighed against the Commonwealth, but not heavily so. It is also to be recognized that certain delays must be charged to the appellant, rather than the Commonwealth. It was appellant who requested a change of counsel, thereby incurring the delays necessary for replacement of counsel and for filing and briefing supplemental post-verdict motions.

The next factor to be considered is whether appellant asserted his rights in a timely manner. Certainly, it appears that counsel for appellant could have been more aggressive in making inquiries into the whereabouts of the delayed transcript, so that post-verdict motions could be briefed, and in making a request for prompt sentencing. Indeed, it is conceded that *no request for sentencing was ever made.* Appellant claims that he did not wish to "needle or otherwise ire the court" by calling attention to the sentencing delay. Others might suggest that appellant refrained from asserting his desire for prompt sentencing until he believed he had a speedy trial claim that might result in a discharge from criminal liability.

Appellant waited until July of 1987, when his *pro se* petition for writ of habeas corpus was filed, to make his first assertion that he was aggrieved by the sentencing delay. This was almost fifty months after his conviction. Quite obviously, this cannot be regarded as a timely assertion of his rights. Appellant's failure to have filed a petition seeking imposition of sentence, during the months that he was supposedly aggrieved by not having received a sentence, counts substantially against his speedy trial claim. See *Commonwealth v. Pounds,* 490 Pa. at 629, 417 A.2d at 600 (failure to petition for immediate sentencing weighs against speedy trial claim). See also *Commonwealth v. Glover,* 500 Pa. at 529, 458 A.2d at 938.

The final factor to be considered is whether prejudice to interests protected by the right to speedy trial has accrued from the delay in sentencing. Appellant argues that it need not be shown that any *particular* prejudice has arisen, and that prejudice should be regarded as inherent in any situation where sentencing has been substantially de-

layed. We do not agree. Our approach has always been to determine whether there has *in fact* been prejudice, rather than to presume that prejudice exists. *Commonwealth v. Glover*, 500 Pa. at 529, 458 A.2d at 938; *Commonwealth v. Pounds*, 490 Pa. at 629–30, 417 A.2d at 600–01 ("lack of identified prejudice"). See also *Commonwealth v. Atkinson*, 364 Pa.Super. 384, 401, 528 A.2d 210, 218 (1987), allocatur denied, 520 Pa. 586, 551 A.2d 213 (1988).

The purposes of the speedy trial right were described as follows in *Commonwealth v. Glover,* supra:

> The particular interests that the Sixth Amendment was designed to protect are the following: to prevent oppressive pre-trial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. *U.S. v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

500 Pa. at 529, 458 A.2d at 938. Appellant cannot claim prejudice from oppressive pre-trial incarceration or impairment of his defense, since the complained-of delay occurred after trial had concluded. Appellant does, however, claim that he suffered "anxiety and concern" as a result of the delay in sentencing, but this claim rings hollow in light of the fact that he waited almost fifty months to assert a speedy trial claim and *never* made a request to be sentenced. See *Commonwealth v. Glover,* 500 Pa. at 529–30, 458 A.2d at 938.

Further, the record indicates that, following his conviction in June of 1983, appellant was released on bail in December of 1984. He remained free until July 1, 1985, when bail was revoked as a result of his being charged with criminal trespass, and other crimes, in a separate matter. Appellant was later convicted of criminal trespass, and was sentenced in August of 1986 to twenty-one to fifty-nine months imprisonment. In view of appellant's having spent time free on bail in connection with the instant matter, and his period of imprisonment on other charges, we do not perceive that he has been significantly prejudiced by the delay in sentenc-

ing.[3] In addition, upon balancing the relevant factors, including the reasons for the delay, the failure of appellant to timely assert a request for sentencing, and the lack of a showing of prejudice attributable to the delay, we conclude that appellant has not been denied his right to a speedy trial.

Closely related to appellant's speedy trial claim is his contention that the due process clause of the Fourteenth Amendment was violated by the delay in sentencing. Appellant asserts that, inasmuch as sentencing acts as a gatekeeper to the appellate process, a delay in sentencing can defeat meaningful appellate review. See *Evitts v. Lucey*, 469 U.S. 387, 393–94, 105 S.Ct. 830, 834, 83 L.Ed.2d 821, 827–28 (1985) (due process requires that, where a right to appeal is provided, the appeal must be adequate and effective rather than a meaningless ritual). Nevertheless, the appellate review which appellant obtained can hardly be considered ineffective or meaningless, since, on appeal to the Superior Court, the judgment of sentence was reversed and a new trial was granted.

 Appellant further argues that due process is violated where delays in sentencing interfere with the promptness of taking an appeal. The asserted right to promptness in appeals is framed in terms of due process rather than the speedy trial right, inasmuch as the latter right does not extend to the taking of appeals. *Commonwealth v. Pounds*, 490 Pa. at 629–30, 417 A.2d at 601. We previously discussed the effect of a due process claim in the context of delayed sentencing, and stated, "the same considerations applicable in the context of a speedy trial claim are applicable to a claimed due process violation based on delays in proceedings." *Id.*, 490 Pa. at 630–31 n. 11, 417 A.2d at 601 n. 11. Thus, the analytical framework described in *Commonwealth v. Glover*, supra, under which certain factors

**3.** Appellant's brief states that, following the Superior Court's decision in November of 1988 reversing the judgment of sentence and granting a new trial, 385 Pa.Super. 649, 555 A.2d 244, reinstatement of bail was granted in January of 1989.

are to be balanced in assessing a speedy trial claim, is applicable to the due process analysis.

■ The sufficiency of the fifty-one month delay to trigger this Court's further inquiry, the causes of the delay, and the lack of haste in appellant's assertion of his rights have already been discussed. Given our consideration of these factors in connection with appellant's speedy trial claim, similar conclusions follow under a due process analysis. Only the final factor enumerated in *Commonwealth v. Glover*, supra, to wit, whether there has been prejudice to interests protected by the affected right, requires some elaboration for purposes of a due process analysis.

Several interests can be identified in facilitating prompt appeals. These include: 1.) prevention of oppressive incarceration pending appeal; 2.) minimization of anxiety and concern of persons awaiting the outcome of their appeals; and 3.) limitation of the possibility that grounds for appeal, or defenses in the event of reversal and retrial, will be impaired. See *Commonwealth v. Greer*, 382 Pa.Super. 127, 139–40, 554 A.2d 980, 986 (1989); *Burkett v. Cunningham*, 826 F.2d at 1222.

In view of the time that appellant spent free on bail, and his period of imprisonment on other charges, there has been no oppressive incarceration attributable to the present case. Nor does it appear that appellant suffered from substantial anxiety and concern, since he never bothered to petition for imposition of sentence so that an appeal could be taken. There is no concern that grounds for appeal were limited, inasmuch as the Superior Court has already reversed the judgment of sentence and granted a new trial. As to whether appellant's defenses upon retrial will be impaired, there is nothing in the record which would indicate that impairment is likely. Nor has appellant made any argument that impairment will occur.

Upon balancing the factors relevant to the due process issue, we find that there has been no violation of due process that would warrant dismissal of the charges against

appellant. See *Commonwealth v. Greer*, 382 Pa.Super. at 141, 554 A.2d at 987. While the delays that have occurred are to be most strongly condemned, the courts below properly held that appellant is not entitled to a discharge from criminal liability, and, thus, that the petition for writ of habeas corpus was properly denied. Appellant will be retried in accordance with the order of the Superior Court.

Order affirmed.

LARSEN and McDERMOTT, JJ., files concurring opinions.

LARSEN, Justice, concurring.

I concur in the result reached by the majority in this case but disagree that the delay was "plainly the result of the negligence, inefficiency or overcrowding in the courts of Blair County." To the contrary, most of the delay was caused by the transcript not being filed and the trial judge's resignation. A transcript is necessary in order to dispose of post-verdict motions, which must be disposed of prior to sentencing. The party taking an appeal has an obligation to see that the trial transcript is prepared and filed. As such, appellant had an obligation to follow up on the status of the transcript, including its filing with the court, so that the court could rule on his motions. Appellant, however, did not follow up on the preparation or filing of the transcript for almost three years. Clearly, appellant failed to meet his obligation, and, therefore, the blame lies not with the courts of Blair County but in appellant himself.

In addition, I fail to see how the trial judge's resignation resulted from the negligence, inefficiency or overcrowding of the Blair County courts. The resignation did, in fact, delay the proceedings in this case, but it does not follow that the court system in Blair County is to blame. A judge's resignation is a matter of personal choice.

McDERMOTT, Justice, concurring.

I join the majority but would dissent if an order for a new trial is allowed for alleged conflict of interest among Public

Defenders. The Public Defenders are large public service institutions numbering many lawyers. That they would relinquish their dedication and integrity upon such bare assertion of prejudice is not a credible or practical belief. See Dissenting Opinion by Mr. Justice Larsen in *Commonwealth v. Westbrook*, 484 Pa. 534, 400 A.2d 160 (1979).