SULLIVAN, Justice,
dissenting.
The central issue in this case is whether the Putnam County public defender's office is a "firm" within the meaning of the Indiana Rules of Professional Conduct. The Court agrees with Respondent that the office is not a "firm" and, therefore, Respondent had no ethical obligation to *230 keep confidential the secrets of the client of another public defender, Ms. Paul.
I respectfully dissent. I believe that the Court employs an overly technical, indeed, near-sighted, definition of "firm" and in doing so loses sight of the principal interest at stake: the inviolability of client confidences. And I need hardly mention that that interest is presented in particularly stark relief here as the client was placed in jeopardy of his physical safety by Respondent's actions.
The test here is whether Respondent and Ms. Paul "present[ed] themselves to the public in a way that suggests that they [were] a firm or conduct[ed] themselves as a firm." Because the inviolability of client confidences is one of the bedrocks of our profession, I would apply this test from a reasonable client's (rather than a lawyer's) perspective.
Take the case of a lawyer at Firm A who receives a fax or e-mail from a lawyer at Firm B containing confidential information about one of Firm B's clients. The reasonable client could not conclude that the lawyer at Firm A and the lawyer at Firm B presented themselves to the public in a way that suggested that they were a firm nor that they had conducted themselves as a firm and, as such, the receiving lawyer at Firm A would not have an ethical obligation to keep the information confidential.
But here, Respondent and Ms. Paul worked in adjoining cubicles in a single office with a sign over the entry door that read "Public Defender's Office." There were no internal doors within the office to separate the cubicles. There was common workspace for non-attorney secretarial staff which supported both lawyers. In this common space were the office files of both lawyers. The lawyers shared the same equipment and used the same stationery and telephone system. -
I submit that any client, whether telephoning one of these lawyers, receiving a letter from one of these lawyers, or going to an appointment with one of these lawyers at the Public Defender's Office, would reasonably conclude that these lawyers both presented themselves to the public in a way that suggested that they were a firm and also conducted themselves as a firm. Indeed, one need not even apply a reasonable client test here as a lawyer-Ms. Paul herself-must have thought that she was in the same firm as Respondent or she would not have disclosed confidential client information to him.
Under the Court's opinion, if Respondent, working in his cubicle, overheard a conversation between Ms. Paul and one of her clients, Respondent would have no ethical obligation to keep the overheard information confidential. I submit that our Rules of Professional Conduct mandate a different result. How can "the trust that is the hallmark of the client-lawyer relationship," Prof. Cond. R. 1.6, emt. 2, be maintained if the lawyer in the next cubicle can reveal that client's secrets simply because the lawyers are not technically in the same "firm"?
In a law review article entitled, Public Defender's Office Is a 'Law Firm' for Purpose of Determining Whether Conflict Exists in Representation of Codefendants, the author supports her argument in part by describing precisely the problem encountered here:
The close association of the attorneys in the public defender's office makes it possible that confidential information will be inadvertently circulated. The necessity of utilizing the services of the same investigator, the inevitable discussions occurring in the office among the attorneys, and the overlapping sources of information from identical witnesses all contribute to this possibility.
*231 Melanie Hines Alford, Comment, Public Defender's Office Is a 'Law Firm' for Purpose of Determining Whether Conflict Exists in Representation of Codefendants, 5 Fla. St. U. L. Rev, 492, 504-05 (1977).
Many jurisdictions have adopted this position as a rule of criminal procedure. For example, after the Pennsylvania Supreme Court held that the Public Defender's Association of Philadelphia constituted a law firm, such that two members of the same firm are prohibited from representing multiple clients with inconsistent defenses, the state's intermediate court of appeals held that the same rule applied to the Carbon County Public Defender's office. This was so even though the lawyers in the Carbon County Public Defender's office worked independently and did not share facilities, staff or files. In fact, they each maintained a private office and utilized their own private secretarial help. Commonwealth v. Green, 379 Pa.Super. 602, 550 A.2d 1011 (1988), following Commonwealth v. Westbrook, 484 Pa. 534, 400 A.2d 160 (1979).
Perhaps the Court is concerned that the public defender arrangement here is a common one in our state's Balkanized system of trial courts and that holding it to be a firm would have negative consequences. But if the public defender's offices here is not a "firm," both lawyers are likely to have conflicts of interest in particular criminal cases from time to time that require the appointment of other counsel. Viewed from the perspective of a large county with a public defender office that is undeniably a "firm," lawyers in such an office are clearly prohibited from representing clients with inconsistent defenses, regularly requiring other counsel to be secured. While the necessity of securing "conflict" counsel presents some negative fiscal and other consequences in counties large and small, they are part of the price that our legal system has long paid to maintain the inviolability of client confidences in criminal cases. They do not justify a deviation from that principle in the case of this particular public defender's office.
For the reasons set forth above, I believe that the public defender's office here constituted a firm such that Respondent had an ethical duty to keep confidential the client information disclosed to him by Ms. Paul, that by disclosing the information, he violated Prof. Conduct R. 1.6(a), and that by using that information to the client's disadvantage, he violated Prof. Conduct R. 1.8(k).