J-S30023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEHOVAH MALDONADO | : | |
| | : | |
| Appellant | : | No. 217 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 2, 2021
In the Court of Common Pleas of Wayne County Criminal Division at
No(s): CP-64-CR-0000052-2021

BEFORE:     STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED APRIL 18, 2023**

Jehovah Maldonado (Appellant) appeals from the judgment of sentence entered in the Wayne County Court of Common Pleas, following his jury convictions of burglary, trespass, theft by unlawful taking, and, separately, persons not to possess a firearm.[1]  Appellant avers the trial court erred in: (1) denying his pre-trial motion to reappoint counsel, where he and a co-defendant were both represented by the Public Defender's Office of Wayne County;[2] and (2) allowing the firearms charge to be tried before the same jury

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a)(2), 3503(a)(1)(ii), 3921(a), 6105(a)(1).

[2] **See** Appellant's Brief at 18.  The appeal of the other defendant, Amelia Weikel, is currently before this same panel at **Commonwealth v. Weikel**,
*(Footnote Continued Next Page)*

following trial and a verdict on the three other offenses, rather than before a new jury. We affirm.

## I. Facts

The following uncontradicted evidence was presented at trial. Barbara Carachilo and her husband, Leon Carachilo, were away from their home in Hawley, Wayne County, in the early morning hours of September 6, 2020.[3] N.T. Trial Vol. I, 11/9/21, at 10-11. Appellant forced open the basement door of the home. N.T. Trial Vol. II, 11/10/21, at 18. He and Jessica Weikel entered the home and took: three guns; five rings (jewelry) valued at $10,000; cash; and surveillance cameras.[4] N.T., 11/9/21, at 12, 14; N.T., 11/10/21, at 19-20. Surveillance video inside the home showed Appellant in the living room with a gun, as well as Appellant and Jessica in the bedroom going through a jewelry box. N.T., 11/9/21, at 16-17. Jessica testified that several days after the burglary, she accompanied and observed Appellant selling a firearm to another individual. N.T., 11/10/21, at 16.

_____

2301 EDA 2021. As we discuss **infra**, Amelia was not present at the burglary, but her wife, Jessica Weikel, was.

[3] Leon Carachilo passed away before trial; Barbara testified at trial. **See** N.T., 9/9/21, at 10.

[4] Jessica testified she met Appellant a "[c]ouple months" earlier through Facebook. N.T., 11/10/21, at 29. Jessica was using heroin and methamphetamine at the time of the burglary. **Id.** at 17.

Barbara stated she did not know either of the two individuals on the surveillance video, but Jessica testified her wife, Amelia Weikel, knew Leon Carachilo.[5] N.T., 11/9/21, at 15; N.T., 11/10/21, at 26-27.

Jessica was arrested approximately one month after the burglary. N.T., 11/10/21, at 22. Amelia was also arrested, apparently the same night, at the hotel room where they were staying. *See id.* at 35. Amelia consented to a search of the room, and officers found some of the jewelry taken from the victims' home. *Id.* at 35-36. In connection with this search, Amelia pleaded guilty to receiving stolen property on June 15, 2021, and was sentenced on September 30, 2021.[6] Meanwhile, Jessica pleaded guilty to theft and was sentenced to 16 to 60 months' imprisonment, as part of a plea deal in which she agreed to testify against Appellant. *Id.* at 16. We note both women were sentenced before Appellant's trial.

## II. Procedural History

Meanwhile, Appellant was charged with conspiracy,[7] burglary, persons not to possess firearms, and related offenses. He is represented by Steven

---

[5] We note Jessica also testified that she and Appellant were driven to the victims' home, by her cousin, in a car belonging to Jessica and Amelia. N.T., 11/10/21, at 18, 27. These were the only two references to Amelia at Appellant's trial.

[6] We glean these dates from the certified record in Amelia's case.

[7] 18 Pa.C.S. § 903(a).

Burlein, Esquire (Trial Counsel), the Chief Public Defender of Wayne County. On September 8, 2021, Appellant filed a motion to sever the firearms charge for purposes of trial, requesting the firearm charge to be tried first. The trial court issued an order, which did not specifically grant formal severance, but stated the firearms charge would be tried first, with the remaining charges "to be tried separately." *See* Order, 9/9/21.

On October 18, 2021, however, the Commonwealth filed a "Motion to Set Order of Trial/Proof," which requested the other offenses be tried first, with the firearm charge subsequently determined by the same jury. In support, the Commonwealth cited: (1) judicial economy, as the evidence would be largely duplicative; and (2) the lack of any prejudice to Appellant, where the fact that he is a convicted felon would not be admissible at the first portion of trial. The court granted the motion the same day. Pertinently, neither the certified record nor trial docket indicate Appellant objected.

Next, on October 21, 2021, Appellant's counsel filed a motion, seeking withdrawal from representation and the appointment of new counsel for Appellant, on the ground he and Amelia's attorney were both members of the Wayne County Public Defender's (P.D.'s) Office. Trial Counsel claimed there was a conflict of interest because: Appellant and Amelia were co-defendants; their interests were in opposition to each other; and Amelia had agreed to testify against Appellant. The Commonwealth filed an answer, claiming it did not intend to call Amelia to testify, and furthermore Appellant and Amelia did

not have inconsistent defenses, as both have denied any involvement in the burglary.

The trial court heard oral argument on October 25, 2021. First, Trial Counsel explained that until recently, the Wayne County P.D.'s Office consisted of part-time attorneys, and it did not "have a separate office of conflict counsel." N.T., 10/25/21, at 4, 5. "[N]ormally[,]" the Office would represent co-defendants until a conflict-of-interest issue was raised. *Id.* at 4. In this case, Appellant raised such an issue with Trial Counsel, who filed the motion for re-appointment of counsel the following day. *Id.* Trial Counsel further stated the Public Defender attorneys were now all full-time, thus "the model [they] have had for many years has changed," and the trial court should recognize the Office as a law firm, whose attorneys could not "represent people who have divergent interests."[8] *Id.* at 5.

_____

[8] On appeal, the Commonwealth asserts the assistant public defenders are "Independent Contractors," rather than full-time employees. *See* Commonwealth's Brief at 5. However, as Appellant points out, no such representation was made at the hearing. *See* Appellant's Reply Brief at 4.

In any event, this Court rejected a similar argument in *Commonwealth v. Green*, 550 A.2d 1011 (Pa. Super. 1988). In that appeal, the Commonwealth argued attorneys of the Carbon County P.D.'s Office should not be considered "members of the same 'law firm,'" for purposes of dual representation. *Id.* at 1012. The Commonwealth asserted: the attorneys maintained private offices, worked independently, and did not share facilities, staff or files; and the County is billed for reimbursement. *Id.* at 1012. The Commonwealth contrasted that office with the Philadelphia P.D.'s Office, which did share expenses, facilities, staff, "and a common interest in the outcome of cases." *Id.* This Court disagreed, noting the Pennsylvania Supreme Court
*(Footnote Continued Next Page)*

Next, Trial Counsel acknowledged the Commonwealth would not call Amelia to testify, but argued that nevertheless, statements made by her "could be used at trial," and furthermore, Trial Counsel and Amelia's counsel had discussions. N.T., 10/25/21, at 5-6. The Commonwealth responded it was not aware of any particular statement by Amelia that would be relevant at Appellant's trial. *Id.* at 6. Instead, the Commonwealth stated, it would rely on Jessica's testimony, the video showing Appellant inside the victims' home, and another witness would identify Appellant on the video. *Id.* at 6. The trial court agreed with the Commonwealth and denied the defense motion for new counsel. *Id.* at 7.

A jury trial commenced on November 9, 2021. As stated above, Jessica testified as a Commonwealth witness, but Amelia did not testify. The Commonwealth also presented a witness, who stated he had known Appellant for 10 years and identified him in the surveillance video.[9] N.T., 11/10/21, at 32-33.

The jury first found Appellant guilty of burglary, trespassing, and theft by unlawful taking. Following the announcement of this verdict, the trial court

---

had not, in prior conflict of issue decisions, examined "the workings of the particular Public Defender's office at issue[.]" *Id.* at 1013.

[9] This witness, Robert Miller, was a Monroe County police officer, but the Commonwealth did not elicit any testimony before the jury about his employment; the Commonwealth only asked Miller whether he knew Appellant and how long. *See* N.T., 11/10/21, at 31-33.

informed the jury it would now consider an additional charge — persons not to possess firearms. No further evidence was presented, but both parties gave closing arguments and the court charged the jury. The jury then found Appellant guilty of this offense as well.

On December 2, 2021, the trial court imposed an aggregate sentence of eight to 20 years' imprisonment, to be followed by one year's probation. Appellant filed a timely post-sentence motion, which was denied. He then filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### III. Statement of Questions Involved

Appellant presents two issues for our review:

1. Whether the Trial Court erred as a matter of law in denying [Appellant's] pretrial Motion to Withdraw as Counsel Due to Conflict of Interest?

2. Whether the Trial Court erred as a matter of law in granting Commonwealth's Motion to Set Order of Trial/Proof, while having previously granted [Appellant's] Motion for Severance of Offenses?

Appellant's Brief at 9.

### IV. Conflict of Interest

In his first issue, Appellant avers the trial court erred in denying his motion to permit his trial attorney to withdraw, due to a conflict of interest. We consider the standard of review and relevant guiding principles.

We review a trial court's finding, that there was no conflict of interest, for an abuse of discretion. *Commonwealth v. Stafford*, 749 A.2d 489, 494

- 7 -

(Pa. Super. 2000) (citation omitted). Pennsylvania Rule of Professional Conduct 1.7(a)(1) provides: "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . the representation of one client will be directly adverse to another client[.]" Pa.R.P.C. 1.7(a)(1). Two members of the same law firm, including a public defender's office, "are prohibited from representing multiple clients with inconsistent defenses." *Commonwealth v. Westbrook*, 400 A.2d 160, 162 (Pa. 1979).

> In *Westbrook*, our Supreme Court explained:
>
> First, '[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such conflict vitiates the proceedings, even though no **actual** harm results. The potentiality that such harm may result, rather than that such harm **did** result, furnishes the appropriate criterion.' . . .
>
> Second, a defendant must demonstrate that a conflict of interest actually existed at trial, because 'dual representation alone does **not** amount to a conflict of interest.' . . .
>
> Third, '[t]o make the dual representation rise to a true conflict, [a defendant] need not show that actual harm resulted, . . . but must at least show the possibility of harm . . . .' . . .
>
> Fourth, [a defendant] will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, 'that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.'

*Westbrook*, 400 A.2d at 162 (some citations omitted & paragraph breaks added) (emphasis in original). In determining whether there is a conflict of

interest, the courts consider whether "advice adverse to a client's interest was given." *Id.* at 163.

Here, Appellant's argument is relatively brief:

[I]t is very clear that the Commonwealth's case against [him] was built upon evidence provided by Weikel [sic]. At trial, Jessica Weikel, who is the spouse of Amelia Weikel, testified for the [C]ommonwealth against . . . Appellant. The conflict of interest existed from the time of preliminary hearing forward, as both Appellant and Weikel had counsel appointed by the Public [D]efender's Office. Weikel [sic] accepted a plea bargain whereby she agreed to testify for the Commonwealth. Based upon the holding of the Supreme [C]ourt in **Westbrook**, [400 A.2d 160,] elucidated in subsequent cases including **Green**, [550 A.2d 1011, A]ppellant respectfully requests he be given a new trial, based on the conflict of interest that existed by the representation of co-defendants within the [P]ublic [D]efender['s O]ffice.

Appellant's Brief at 18. We conclude no relief is due.

We acknowledge the connections, between Amelia and Appellant's case, that were presented at trial: (1) Jessica testified that while she did not know either of the victims, her wife Amelia knew the victim Leon; and (2) the jewelry, taken from the victims' home, was found in the hotel room where Amelia and Jessica were staying. *See* N.T., 11/10/21, at 26-27, 35-36. However, we emphasize Appellant has **not**, before the trial court or on appeal, made any reference to these specific, undisputed facts.

We further note an allegation, set forth in the affidavit of probable cause supporting the police complaint: that after the victim Leon arrived home in the early morning hours on the day of the burglary, he told the responding

police officer he was out with "his girlfriend, Amelia [Weikel.[10]]"  Affidavit of Probable Cause, 9/25/20, at 1.  Leon explained he returned home at 2:30 a.m. and "found that someone had broke[n] into his house by forcing open a rear basement door."  *Id.*  The officer determined the woman seen in the surveillance video inside the home was Amelia's wife, Jessica.  *Id.*  However, again, Appellant has not made any reference to these facts — either in his motion for re-appointment of counsel, the hearing on the motion, or on appeal before this Court.

Instead, Appellant's broad arguments at the October 25, 2021, hearing, were merely that: (1) he and Amelia had "divergent interests[;]" (2) Trial Counsel and Amelia's counsel had discussions; and (3) "there's a statement [made by Amelia] that could be used at trial[ ]" *via* another witness' testimony.  N.T., 10/25/21, at 5-6.  Appellant did not present further discussion of any of these points, even after the Commonwealth made it clear it was not aware of any such statement by Amelia, and in any event, it did not intend to present it.  *See id.* at 6 (Commonwealth stating, "I don't know exactly what statement [defense counsel is] talking about that we're going to try to put into evidence.  I just don't know what it is.").

---

[10] The affidavit of probable cause identified Amelia as "Amelia LOCKWOOD (WEIKEL) [sic]."  Affidavit of Probable Cause at 1.

On appeal, Appellant's argument is similarly vague. Aside from referring to Jessica and Amelia's relationship as spouses, he does not articulate any other connection between his case and Amelia. *See* Appellant's Brief at 18. Although Appellant insists "it is very clear that the Commonwealth's case against [him] was built upon evidence provided by Weikel [sic][,]" he does not pinpoint what this evidence is. *See id.* Indeed, Appellant's discussion tends to conflate the different roles that Jessica and Amelia had in this case. *See id.* (stating Appellant and "Weikel" both had appointed public defender attorneys, and in the very next sentence, stating "Weikel" agreed to testify against him as part of a plea bargain). *See id.* While it is true Amelia was represented by an assistant public defender, it was Jessica who testified against Appellant at trial.

Furthermore, we disagree with Appellant's contention that *Westbrook* and *Green* afford him relief. *See* Appellant's Brief at 18. In *Westbrook*, the defendant, represented by an assistant public defender, was charged with robbery. *Westbrook*, 400 A.2d at 161. He raised a defense of mistaken identity, arguing it was his brother, whom he closely resembled, who committed the crime. *Id.* The brother initially agreed to give a statement to police, but upon the advice of another assistant public defender, did not give a statement. *Id.* The defendant, subsequently found guilty, raised a Post-

Conviction Hearing Act[11] claim that he was denied the effective assistance of counsel due to a conflict of interest. *Id.* Our Supreme Court agreed, reasoning the defendant established that "his defense, *i.e.*, [that] his brother[ ] was the actual criminal party, was inconsistent and conflicting with [the brother's] counseled decision to exercise his Fifth Amendment rights." *Id.* at 163. Here, in contrast, Appellant has not argued the defense or legal advice given to him by Trial Counsel has conflicted with the legal advice given to Amelia.

In *Green*, the defendant was charged with offenses relating to a burglary and was represented by a member of the Carbon County P.D.'s Office. *Green*, 550 A.2d at 1011. At trial, he denied any involvement or knowledge of the burglary. *Id.* His co-defendant, represented by the same P.D.'s Office, had pleaded guilty and testified at trial against the defendant that he (the defendant) participated in the planning and commission of the burglary. *Id.* Subsequently, the trial court granted the defendant a new trial based on a conflict of interest. *Id.* at 1011-12. On appeal however, the sole issue raised by the Commonwealth was whether the P.D.'s Office should be considered a law firm for conflict of interest purposes. *Id.* at 1012; *see also* n.8, *supra*. The Superior Court held the P.D.'s Office was a law firm for such

---

[11] This Act, then-numbered at 42 Pa.C.S. §§ 9541-9551, was the predecessor to the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9545.

purposes, and affirmed the trial court's ruling on this basis only. ***Green***, 550 A.2d at 1013.

As the ***Green*** Court did not address the merits of the underlying conflict-of-interest ruling, the opinion does not support Appellant's argument. In any event, we note that here, as discussed above, Amelia did not testify against Appellant nor provide any evidence that was used against him at trial.

In contrast, we find guidance in ***Commonwealth v. Karenbauer***, 715 A.2d 1086 (Pa. 1998). In that case, the defendant Karenbauer was charged with first-degree murder, and he allegedly confessed to the murder to a fellow inmate. ***Id.*** at 1093-94. The attorney representing the fellow inmate was then appointed to represent Karenbauer, but five days later, was permitted to withdraw from representing the fellow inmate. ***Id.*** Nevertheless, the attorney filed a petition to also withdraw from representing Karenbauer, citing a conflict of interest. ***Id.*** at 1093. At a pre-trial hearing on this issue, the prosecutor stated it would not call the fellow inmate as a witness, so long as Karenbauer's motion to suppress inculpatory statements he made to police was denied. ***Id.*** at 1094. When the suppression motion was denied, the trial court also denied counsel's motion to withdraw, finding no conflict of interest. ***Id.***

On appeal, the Pennsylvania Supreme Court affirmed this ruling. ***Karenbauer***, 715 A.2d at 1094. The Court reasoned that for five days, the attorney "was in the position of having a former client [sic] who might be called to testify against a current client," but "that possibility **evaporated** . . .

- 13 -

when the Commonwealth declared that it would not call [the fellow inmate] as a witness." *Id.* (emphasis added). The Court concluded "the record clearly demonstrate[d] counsel did not actively represent conflicting interests, [and] a claim based on the appearance of a conflict of interest lacks merits." *Id.* Similarly, here Appellant has not explained how his and Amelia's attorneys "actively represented conflicting interests." *See Karenbauer*, 715 A.2d at 1094.

In light of the foregoing authority, on this particular record, we find no abuse of discretion in the trial court's denial of Appellant's motion for re-appointment of counsel. *See Westbrook*, 400 A.2d at 163. We emphasize that: (1) the Commonwealth made clear, pre-trial, that it would not call Amelia to testify nor present any evidence or statement related to Amelia, and instead, the Commonwealth would rely on other evidence, especially surveillance video, Jessica's testimony implicating Appellant in the burglary, and another witness who would identify Appellant in the surveillance video; and (2) Appellant has **not** argued and established that the legal advice given to him by Trial Counsel conflicted with the legal advice given to Amelia, his defense was inconsistent with Amelia's defense, he and Amelia had conflicting interests, or Trial Counsel "neglected his case in order to give [Amelia] a more spirited defense." *See Karenbauer*, 715 A.2d at 1094; *Westbrook*, 400 A.2d at 161-62. We thus agree with the trial court that, despite the Wayne

- 14 -

County P.D.'s Office performing dual representation here,[12] Appellant has not established a conflict of interest.

## V. Bifurcation, not Severance, of Firearms Charge

In Appellant's second issue, he avers the trial court erred in granting the Commonwealth's "Motion to Set Order of Trial/Proof," such that all the offenses would be tried before the same jury, where the court had previously granted his request to sever the charges.[13] Appellant contends he was unduly prejudiced because the jury, in considering the firearms charge, had already

---

[12] Nevertheless, we remind the parties and the trial court that in **Westbrook**, the Pennsylvania Supreme Court cited the American Bar Association Standards Relating to Defense Function — Conflict of Interest:

> [Generally,] a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. **The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations** when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.[ ]

**Westbrook**, 400 A.2d at 162-63 (emphasis added).

[13] In a civil case, our Supreme Court explained the distinction between bifurcation and severance. **Stevenson v. Gen. Motors Corp.**, 521 A.2d 413, 417 (Pa. 1987). Generally, bifurcation "allows for a pause in the proceeding[s]," whereas severance "effects a splitting of [separate causes of action] into one or more independent actions for all purposes, including trial and appellate procedure." **Id. See also id.** at 416 (bifurcated trial can be considered two halves of one trial).

- 15 -

heard all the evidence presented for the other offenses. Appellant's Brief at 20. He reasons, "[H]ow could the jury make [a] finding other than guilty," it was "impossible for him not to be convicted of the firearms charge," and in fact, the jury decided the firearms charge "almost immediately." *Id.* Appellant concludes the trial court should have allowed the firearms charge to be heard by a separate jury, and thus requests a new trial on the firearms charge. *Id.* at 21. We agree with the trial court that Appellant has waived this issue.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). The trial court suggests Appellant has waived any challenge to its decision to bifurcate, rather than sever, the charges, where he has not preserved any objection on the record. Trial Ct. Op., 2/16/22, at 3. Appellant does not address, let alone dispute this reasoning. *See* Appellant's Brief at 19-21. Our review of the record confirms the trial court's reasoning, and we agree the issue is waived for our review.

Moreover, even if the issue were preserved, we would conclude no relief is due. We review the ruling on a motion for severance for an abuse of discretion. *Commonwealth v. Brown*, 186 A.3d 985, 993 (Pa. Super. 2018). Pennsylvania Rule of Criminal Procedure 583 provides that a "court may order separate trials of offenses . . . or provide other appropriate relief, if it appears that any party may be prejudiced by offenses . . . being tried together." Pa.R.Crim.P. 583. Under this rule, prejudice occurs if, pertinently, "the

evidence tended to convict the [defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." **Brown**, 186 A.3d at 993. However, "the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself." **Id.** Finally, we note the offense of persons not to possess a firearm is defined as follows: "A person . . . convicted of [one of the enumerated offenses] shall not possess, . . . control [or] sell . . . a firearm[.]" 18 Pa.C.S. § 6105(a)(1).

Here, the trial court maintains that despite Appellant's titling his motion as a "Motion for Severance of Offenses," its order merely stated, specifically, that the firearms offense would be tried separately from the other charges. Trial Ct. Op. at 3. **See also** Order, 9/9/21 ("[I]t is hereby ORDERED that Count 8 . . . [s]hall be tried before Jury first [sic], with the remaining charges . . . to be tried separately."). The court reasons that bifurcating the charges accomplished this directive, and furthermore "judicial economy would be wasted to have two separate trials . . . and two separate juries[.]" Trial Ct. Op. at 3.

We would agree with the trial court. Appellant does not present any discussion why the evidence presented in support of the first set of charges — including the surveillance video and the witnesses' testimony — would not be admissible at a trial on the persons not to possess firearms charge. As stated

- 17 -

above, "the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself." *Brown*, 186 A.3d at 993.

## VI. Conclusion

In sum, we conclude: (1) the trial court did not abuse its discretion in denying Appellant's motion for re-appointment of counsel; and (2) Appellant has waived an appellate challenge to the bifurcation, rather than the severance, of his charges. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2023