J-S45012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAMON JONES, | |
| Appellant | No. 520 EDA 2013 |

Appeal from the Judgment of Sentence December 14, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0907121-1982

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 24, 2014**

Damon Jones appeals from the judgment of sentence of two consecutive life sentences imposed by the trial court after the Commonwealth elected not to re-pursue the death penalty following the grant of penalty phase relief during PCRA proceedings. After careful review, we affirm.

The facts of this matter were detailed by the Pennsylvania Supreme Court in **Commonwealth v. Jones**, 610 A.2d 931 (Pa. 1992), as follows:

> Appellant's convictions arose from a drug-related massacre in which two persons were killed and six others were seriously wounded in a courtyard at the Richard Allen Housing Project (Project) in the City of Philadelphia. The factual background is as follows.

_____

* Former Justice specially assigned to the Superior Court.

On August 25, 1982, Sylvester Williams confronted Ernest Wright and demanded that he stop selling drugs in the Project. Williams confiscated the sum of $200.00 from Wright. Later that day, Williams encountered Isaiah Givens and discussed the earlier confrontation with Wright. Givens told Williams that there would be no acts of reprisal from himself, appellant, or Portie Robertson. Nevertheless, on the following day, appellant, accompanied by Givens and Robertson, entered the courtyard of the Project. All three men were carrying handguns. At that time, Williams was near the steps of a building that fronted the courtyard. An unidentified man approached the well-armed trio, whereupon appellant announced, "This is not meant for you. Move." Appellant, Givens, and Robertson then began to fire their weapons. In rapid succession they fired approximately twenty shots towards Williams. Numerous people were in the courtyard at the time, standing near Williams. Two of them, including one seven-year-old child, were killed and six others were seriously wounded. Williams was not hit. Appellant, Givens, and Robertson fled but were soon apprehended by police.

Appellant, Givens, and Robertson were tried jointly for this crime and all were convicted. In accordance with the jury's verdict in the penalty phase of trial, Givens and Robertson were sentenced to life imprisonment and appellant was sentenced to death.

*Id*. at 935.[1]

Appellant filed a timely first time PCRA petition on January 16, 1997, pursuant to the 1995 amendments to the PCRA statute. The PCRA court ultimately directed that Appellant had until March 15, 2000, to file a supplemental amended petition. Appellant complied, and the court heard

_____

[1] The jury returned guilty verdicts in the guilt phase of the trial on May 19 1983, after a two month trial, but Appellant was not sentenced until 1987. The Pennsylvania Supreme Court in **Commonwealth v. Jones**, 912 A.2d 268 (Pa. 2006), noted that Appellant filed post-verdict motions raising ninety claims of error. The Pennsylvania Supreme Court decided Appellant's direct appeal in 1992.

argument on whether to grant an evidentiary hearing on July 26, 2000. That same date, the PCRA court granted an earlier filed motion for discovery relative to *voir dire* notes of the trial prosecutor. The Commonwealth filed an interlocutory appeal, and the Pennsylvania Supreme Court reversed the discovery order. **Commonwealth v. Jones**, 802 A.2d 1232 (Pa. 2002).

Thereafter, on March 13, 2003, the PCRA court conducted an evidentiary hearing. Subsequently, the court denied Appellant's guilt phase claims, but awarded penalty relief. Both Appellant and the Commonwealth appealed. The Supreme Court affirmed the PCRA court's denial of guilt phase relief. It also agreed that Appellant's penalty phase claim regarding trial counsel's failure to develop whether Appellant had the capacity to appreciate the criminality of his actions or conform his conduct to the law was meritorious. However, Appellant had not adequately layered his claims relative to appellate counsel. Accordingly, the court remanded. After remand, the PCRA court reinstated its order finding that Appellant was entitled to penalty phase relief. The PCRA court entered that order on August 3, 2007. The Commonwealth did not appeal.

The matter remained dormant until Appellant filed a counseled motion on March 23, 2009, seeking imposition of life imprisonment and arguing that the court's failure to conduct a new penalty phase trial was a violation of Pa.R.Crim.P. 600 and denied him due process under the Fourteenth Amendment. On May 22, 2009, the court denied the motion on the basis

that Rule 600 did not apply to capital re-sentencing. The court certified its order to allow Appellant to seek an interlocutory appeal by permission. Initially, Appellant filed that appeal with this Court, which transferred the matter to the Pennsylvania Supreme Court. The Pennsylvania Supreme Court denied the petition on September 22, 2009. ***Commonwealth v. Jones***, 981 A.2d 1285 (Pa. 2009).

Ultimately, the Commonwealth elected not to pursue the death penalty. The court sentenced Appellant on December 14, 2012, to two consecutive terms of life imprisonment for the murder charges. Appellant filed a *pro se* post-sentence motion and a request to proceed *pro se*. The court denied Appellant's post-sentence motion, but authorized him to continue *pro se*.

Appellant filed a timely *pro se* notice of appeal. In response to Appellant's motion to compel the Commonwealth to provide him with the record and request for an extension to file his brief, this Court, on July 15, 2013, remanded for a ***Grazier***[2] hearing to determine if Appellant's waiver of counsel was knowing, voluntary and intelligent. The trial court conducted a ***Grazier*** hearing on September 20, 2013, and reaffirmed that Appellant could proceed *pro se*. The court also directed that all relevant notes of testimony and exhibits be provided to Appellant. The matter is now ready for this Court's review. Appellant presents two issues for our consideration.

_____

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

- 4 -

1. Whether appellant's speedy trial rights and due process rights guaranteed by the United States and Pennsylvania Constitution were violated by the delay between the vacation of his prior sentence and his resentencing; whether trial court erred in denying appellant's motion to dismiss murder charges due to prejudicial delay in resentencing?

2. Whether appellant's speedy appeal rights, due process and equal protection rights guaranteed by the United States Constitution were violated by the State's failure to provide appellant, an indigent *pro se* litigant, with a full and complete record per this Court's order for purpose of meaningful appellate review, thereby resulting in a delay of this appeal?

Appellant's brief at 2.

Appellant's initial issue implicates three separate but interrelated positions relative to the failure to timely conduct capital resentencing and his ultimate resentencing to life imprisonment. Appellant's three distinct and intertwined arguments fall into the following categories: a violation of his federal and Pennsylvania constitutional speedy trial rights, a violation of his federal and Pennsylvania due process right to a speedy re-sentencing, and an alleged violation of Pa.R.Crim.P. 600.

Appellant contends that the Sixth Amendment, Fourteenth Amendment, and Article I, § 9 guarantees of a speedy trial and due process apply to capital resentencing proceedings and the failure to sentence him in a timely fashion warrants discharge. *See* Appellant's brief at 16 (citing *Pollard v. United States*, 352 U.S. 354 (1957), *Burkett v. Cunningham*, 826 F.2d 1208 (3rd Cir. 1987), *Commonwealth v. Glass*, 586 A.2d 369 (Pa. 1991), *Commonwealth v. Pounds*, 417 A.2d 597 (Pa. 1980), and

*Commonwealth v. Greer*, 554 A.2d 980 (Pa.Super. 1989); *United States v. Sanders*, 452 F.3d 572 (6th Cir. 2006) (delay in resentencing implicates due process rights). He accurately points out that in Pennsylvania, in determining whether a person's speedy trial rights or due process rights are violated due to delay, the court looks to the four-part test outlined in *Barker v. Wingo*, 407 U.S. 514 (1972). This test first requires the court to determine if the delay is sufficient to trigger further inquiry. If the delay is substantial enough to implicate further review, the court balances the delay with the reasons for the delay, examines whether the defendant timely asserted his right, and, most importantly, determines if any prejudice resulted.

Appellant highlights that the length of the delay between the PCRA court's award of sentencing relief and his resentencing was over five years. Noting that shorter delays have elicited review under a speedy trial analysis, Appellant submits that the reason for the delay was because the court did not schedule a new penalty phase trial within 120 of the PCRA court's award of sentencing relief. *See* Appellant's brief at 17 (quoting former Pa.R.Crim.P. 600(D)(1)). Citing *Commonwealth v. Solano*, 906 A.2d 1180 (Pa. 2006), and *Commonwealth v. Bockzowski*, 846 A.2d 75 (Pa. 2004), for the proposition that Rule 600 applies to capital resentencing, Appellant also argues that "the Commonwealth deliberately failed to make a 'diligent good faith effort' to make a speedy determination of appellant's case, after

- 6 -

the court's August 3, 2007 order granting him a new penalty phase trial." Appellant's brief at 18.

Appellant adds that it is immaterial whether the 120-day period of Rule 600 or the 365 day time frame is utilized since his capital resentencing was not conducted within either period. According to Appellant, the Commonwealth "did absolutely nothing within either time period, following the August 3, 2007 order granting appellant a new penalty phase trial, to have the case scheduled for a new penalty phase trial." *Id*. In Appellant's view, this alleged inaction is "presumptively prejudicial." *Id*.

Appellant maintains that because the Commonwealth successfully argued before the lower court that Rule 600 did not apply and the Pennsylvania Supreme Court denied his interlocutory appeal, his case was never scheduled for resentencing for over five years. He contends that he notified the court in September 2008 that he needed to be resentenced and again on March 23, 2009.[3] Since the Commonwealth took no action to schedule a new penalty phase hearing, Appellant argues that he timely sought relief and the delay must be attributed to the Commonwealth. In addition, Appellant suggests that the court below erred in considering numerous defense continuances because the docket indicates that the hearings that were continued were PCRA hearings and not his capital

_____

[3] The September filing referenced by Appellant was not docketed with the Philadelphia Court of Common Pleas, but was a federal *habeas* petition.

resentencing. With respect to the prejudice prong of the ***Barker*** test, Appellant claims that he was made to suffer unnecessary anxiety due to fear of being sentenced to death. Despite being incarcerated for life on another murder conviction, Appellant argues that he was deprived of his personal liberty because he was housed on death row and in solitary confinement. The Commonwealth has not met the minimal appellate requirements of an appellee by failing to file a timely brief in this matter.

We begin with the language of the respective speedy trial constitutional provisions. The Sixth Amendment's speedy trial proviso, which has been held to apply to the states via the Fourteenth Amendment, *see **Klopfer v. North Carolina***, 386 U.S. 213 (1967), reads, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" U.S. Const. amend. VI. Similarly, the Pennsylvania Constitution provides, "in all criminal prosecutions, the accused hath a right to . . . a speedy public trial by an impartial jury of the vicinage[.]" Pa.Const. Art. I, § 9. In addition, the Pennsylvania Constitution sets forth that "Trial by jury shall be as heretofore and the right thereof remain inviolate." Pa.Const. Art. 1, § 6. This latter provision has been construed to protect the same right existing at the time of the ratification of the first Pennsylvania constitutions. ***Byers v. Commonwealth***, 42 Pa. 89 (1862); ***see also Van Swartow v. Commonwealth***, 24 Pa. 131 (1854).

The right to trial by jury was so sacrosanct that it was guaranteed to Pennsylvania colonists even prior to William Penn's arrival. *See* Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 66 (1907). Specifically, it was set forth that:

> All trials shall be by twelve men, and as near as may be peers or equals, and of the neighborhood, and men without just exception. In cases of life there shall be first twenty four returned by the Sheriff for a grand inquest, of whom twelve at least shall find the complaint to be true, and then the twelve men, or peers, to be likewise returned by the Sheriff, shall have the final judgment; but reasonable challenges shall always be admitted against the said twelve or any of them.

*Id*. quoting Duke of York's Book of Laws, 100.

The Stamp Act Congress of the American Colonies, wrote in 1765, "That trial by jury is the inherent and invaluable right of every British subject in these colonies." *See Duncan v. Louisiana*, 391 U.S. 145, 152 (1968). The First Continental Congress echoed these sentiments in 1774, objecting to legislation allowing colonists to be tried in Britain. *Id*. The Declaration of Independence noted that colonists had been deprived of the right to trial by jury, and that the King caused colonists to be transported to England for trial.

In Pennsylvania, those in the minority at the ratification convention for the federal constitution issued a dissenting address that took issue with the absence of a bill of rights. Among the amendments the minority believed should be considered was, "That in all capital and criminal prosecutions, a man has a right to . . . a speedy trial by an impartial jury of his vicinage,

without whose unanimous consent, he cannot be found guilty[.]" The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to their Constituents, reprinted in The Anti-Federalist Papers and the Constitutional Convention Debates, 239 (Ralph Ketcham, ed. 1986). The Virginia ratifying convention, upon approval of the federal constitution absent a bill of rights, recommended the adoption of a similar amendment that read, "That, in all criminal and capital prosecutions, a man hath a right . . . to a fair and speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty[.]" The Debates in the Convention of the Commonwealth of Virginia on the Adoption of the Federal Constitution, June 27, 1788, reprinted in The Anti-Federalist Papers and the Constitutional Convention Debates, 220 (Ralph Ketcham, ed. 1986).

Alexander Hamilton, writing as Publius in Federalist Paper 83 remarked, "The friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury; or if there is any difference between them it consists in this: the former regard it as a valuable safeguard to liberty; the latter represent it as the very palladium of free government." Federalist Paper 83, reprinted in The Federalist Papers, 498 (Charles R. Kesler, ed. 1961). Hence, the right to a speedy jury trial to determine the guilt of an accused was essential to early American constitutional writers and ratifiers.

Neither the United States Supreme Court nor the Pennsylvania Supreme Court has held that the right to a speedy trial applies to sentencing, let alone resentencing following the award of post-conviction relief. Rather, more precisely, the respective High Courts have assumed, without deciding, that the right to a speedy trial extends to an original sentencing proceeding. *See **Pollard**, **supra**; **Pounds**, **supra**; **Glass**, **supra**; **Commonwealth v. Glover***, 458 A.2d 935 (Pa. 1983). Concomitantly, most of the federal circuit courts have either assumed without analysis or imprecisely concluded that ***Pollard*** compels a finding that the speedy trial right applies to sentencing. ***United States v. Ray***, 578 F.3d 184, 192-193 (2nd Cir. 2009) (collecting cases).

This Court, without meaningful discussion, has held that the speedy trial guarantee applies to a non-capital sentencing proceeding where the initial sentence was vacated at the request of the defendant, prior to a direct appeal, and re-imposed over seven and one-half years later. ***Greer**, **supra***. In contrast to ***Greer's*** cursory discussion, the Second Circuit Court of Appeals has closely examined whether sentencing falls within the ambit of the Sixth Amendment's speedy jury trial protection and concluded that the federal constitutional guarantee does not apply to non-capital resentencing after a direct appeal remand. *See **Ray**, **supra***.

The ***Ray*** Court engaged in an original public meaning analysis, which this Court is ordinarily required to do when construing our own constitution,

*Monongahela Nav. Co. v. Coons*, 6 Watts and Serg. 101, 114 (Pa. 1843); *Stilp v. Commonwealth*, 905 A.2d 918, 939 (Pa. 2006), and elucidated that Sir William Blackstone, in his famous Commentaries on the Laws of England, distinguished between a trial and the judgment. The judgment, *i.e.*, imposition of sentence, followed the trial and an adjudication of guilt. *See also Apprendi v. New Jersey*, 530 U.S. 466, 479 n.4. (2000) (quoting Blackstone); *id*. at 479-480 (footnote omitted) (bracket in original) ("As Blackstone, among many others, has made clear, '[t]he judgment, though pronounced or awarded by the judges, is not their determination or sentence, but the determination and sentence of the law.'").

As the United States Supreme Court recognized in *Woodson v. North Carolina*, 428 U.S. 280, 289 (1976) (plurality), "in 1791, the States uniformly followed the common-law practice of making death the exclusive and mandatory sentence for certain specified offenses." Even before 1791, "the Colonies at the time of the Revolution imposed death sentences on all persons convicted of any of a considerable number of crimes, typically including at a minimum, murder, treason, piracy, arson, rape, robbery, burglary, and sodomy." *Id*.

Pennsylvania was the first state to categorize murder into degrees and eliminate an automatic death sentence for certain homicide offenses. *See Woodson*, *supra*; *Commonwealth v. Carbone*, 544 A.2d 462, 466 n.1 (Pa.Super. 1988) *reversed on other grounds* 574 A.2d 584 (Pa. 1990). In

*White v. Commonwealth*, 6 Binn. 179 (Pa. 1813), the Pennsylvania Supreme Court noted that, by statute, a jury determined the person's degree of guilt, unless a person was convicted by confession, and the court sentenced accordingly. Where the defendant pled guilty, the court decided the degree of guilt before imposing sentence. Thus, the jury trial and sentencing were distinct processes, though the jury determined the facts necessary to impose a death sentence when the person did not plead guilty. *Id*. at 183. The Court observed,

> It seems taken for granted, that it would not always appear on the face of the indictment of what degree the murder was, because the jury are to ascertain the degree, by their verdict, or in case of confession, the court are to ascertain it by examination of witnesses. But if the indictments were so drawn as plainly to show that the murder was of the first or second degree, all that the jury need do, would be to find the prisoner guilty in manner and form as he stands indicted.

*Id*.[4]

_____

[4] Professors Nancy J. King and Susan R. Klein, writing in the Vanderbilt Law Review, have noted,

> In Pennsylvania, maximum terms of imprisonment were set by acts of 1786 and 1790. 1786 Pa. Laws 280-290; 1790 Pa. Laws 293-306 (e.g., up to ten years for robbery, burglary, or sodomy). In 1794, most sentences for major felonies carried set minimum as well as maximum ranges. See 1794 Pa. Laws 174-181 (limiting penalties for, e.g., treason (six to twelve years); arson (five to twelve years); rape (two to twenty-one years); second-degree murder (five to eighteen years); forgery (four to fifteen years)); see also Brief History of Penal Legislation of Pennsylvania, 1 PA. J. PRISON DISCIPLINE & PHILANTHROPY 1, 3-4 (1845)[.]

*(Footnote Continued Next Page)*

It is apparent from the language of the jury trial provisions that the original public meaning of the term "trial" consisted of the phase of the criminal prosecution that determined guilt or innocence, not sentencing procedures. Although **Greer** requires this Court to consider certain sentencing claims within the ambit of the federal speedy trial clause, **Greer** did not speak to a speedy trial right claim after the award of post-conviction relief in the nature of a new capital penalty phase hearing. Further, **Ray** did not discuss the issue in the context of a capital resentencing proceeding, which involves distinct concerns not relevant to non-capital sentencing scenarios.

In this respect, we are aware that capital sentencing in Pennsylvania is conducted by a jury and, under Pennsylvania's death penalty scheme and **Ring v. Arizona**, 536 U.S. 584 (2002), aggravating facts must be proven to outweigh any mitigating factors to subject a person to the death penalty.[5] Of course, there is no constitutional requirement that these aggravating factors be determined at a separate penalty phase sentencing hearing. **Ring**, **supra** at 612-613 (Scalia, J., concurring); **cf. Spaziano v. Florida**,

_____
*(Footnote Continued)*

Nancy J. King & Susan R. Klein, 54 Vand.L.Rev. 1467, 1506 n.134 (May 2001).

[5] We are cognizant that our Supreme Court has ruled that the aggravating facts need not be found to outweigh mitigating circumstances by a beyond the reasonable doubt standard, only that the aggravating factors be determined by the reasonable doubt standard. **Commonwealth v. Roney**, 866 A.2d 351, 359-361 (Pa. 2005).

468 U.S. 738 (1984) (Sixth Amendment does not require a jury to determine appropriateness of death penalty); **Proffitt v. Florida**, 428 U.S. 242, 252 (1976) (plurality) ("it has never [been] suggested that jury sentencing is constitutionally required.").

Simply put, the jury-trial right in the Sixth Amendment and Article I, § 9 did not guarantee a separate jury trial for purposes of capital sentencing, only that the facts necessary to impose that sentence be determined during the actual trial. As discussed, the speedy jury-trial right was intended to apply to the guilt determination of the accused.

Nonetheless, while capital sentencing was not considered part of a trial at the time of ratification of the speedy trial provisions, the guilt phase of the trial would have encompassed the factual determinations that are now separately decided at sentencing. **See Ring**, **supra**; **Walton v. Arizona**, 497 U.S. 639, 710-711 (1990) (Stevens, J., dissenting) (italics in original) ("the English jury's role in determining critical facts in homicide cases was entrenched. As fact-finder, the jury had the power to determine not only whether the defendant was guilty of homicide but also the degree of the offense. Moreover, *the jury's role in finding facts that would determine a homicide defendant's eligibility for capital punishment was particularly well established.* Throughout its history, the jury determined which homicide defendants would be subject to capital punishment by making factual determinations, many of which related to difficult assessments of the

- 15 -

defendant's state of mind. By the time the Bill of Rights was adopted, the jury's right to make these determinations was unquestioned."); **cf. Alleyne v. United States**, 133 S.Ct. 2151 (2013).[6]

This is in contrast to discretionary sentencing proceedings in non-capital cases, which did not fall within the parameters of a "trial" under the original public meaning of the term. **See Ray**, **supra**; **but compare Greer**, **supra**; **Commonwealth ex rel. Holly v. Ashe**, 82 A.2d 244, 251 (Pa. 1951) (Stern, J., dissenting) *(*"Our Constitution provides in Article I, sec. 9, P.S. that 'In all criminal prosecutions the accused hath a right to * * * a *speedy* public trial * * *.' *The sentence is part of the trial*. If the expiration of the term is not to be accepted as the limit within which sentence must be imposed, what alternative limit can be established in order to protect the rights of a defendant who might otherwise languish indefinitely in jail, even though perhaps improperly convicted, but unable to appeal to an appellate court until sentence was imposed?") (italics in original).

Since Pennsylvania has elected to require a separate proceeding to determine aggravating factors, that original proceeding under **Ring** is included within the jury trial right. It would be incongruous to find that the jury trial right includes a determination of aggravating factors for purposes

_____

[6] We do not imply that, at the time of ratification of the respective constitutions, a jury would have been required to find aggravating factors to sentence a person to death. As Justice Scalia noted in his concurring opinion in **Ring v. Arizona**, 536 U.S. 584 (2002), this paradigm has arisen due to evolving Eighth Amendment jurisprudence.

of sentencing, but that the initial proceeding that does so is not included within the speedy trial right protections. Thus, the penalty phase of a capital trial and necessarily any resentencing under Pennsylvania's current capital scheme are part of the constitutional jury trial rights. **Compare Ring**, **supra** at 612-613 (Scalia, J., concurring) ("Those States that leave the ultimate life-or-death decision to the judge may continue to do so—by requiring a prior jury finding of aggravating factor in the sentencing phase or, more simply, by placing the aggravating-factor determination (where it logically belongs anyway) in the guilt phase.").

Regardless, the analysis that Pennsylvania courts employ in examining a due process speedy sentencing question is identical to that utilized for a speedy trial issue. Indeed, it is largely a matter of semantics whether the speedy trial right or due process rights are implicated. Succinctly put, even if the speedy trial provisions do not apply, a court may not delay capital resentencing indefinitely without constitutional ramifications. Pointedly, once resentencing is provided, it must accord with due process. **See Clemons v. Mississippi**, 494 U.S. 738, 746 (1990) (capital sentencing must accord with due process); **Gardner v. Florida**, 430 U.S. 349, 358 (1977) (plurality) (same); **Sanders**, **supra** at 580 (delay in resentencing may run "afoul of due process guarantees"); **Ray**, **supra** at 199.[7]

_____

[7]  We recently noted that the phrase "due process" is not contained in the Pennsylvania Constitution, but the term "law of the land," used in Article I,
*(Footnote Continued Next Page)*

- 17 -

Under both a speedy trial right and due process analysis, Pennsylvania courts utilize the **Barker** test discussed by Appellant. **Commonwealth v. West**, 938 A.2d 1034, 1045 (Pa. 2007) (collecting cases); **see Pounds**, **supra**; **Glover**, **supra** at 664 n.1; **compare Sanders**, **supra** (holding Sixth Amendment jury trial right does not apply to delay in non-capital resentencing and that, while due process analysis applied, **Barker** test was inapt). We agree with Appellant that the over-five-year delay between his award of PCRA sentencing relief and the imposition of his sentence is sufficient to trigger further inquiry. Appellant's claim, however, fails for reasons we outline below.

First, Appellant did not object to the absence of a new penalty hearing until March 23, 2009, when he filed a motion for sentencing to life imprisonment.[8] Appellant's claim that he earlier alerted the Commonwealth via his federal *habeas* petition may well be true, but it would not have alerted the trial court absent a filing with that body. Notably, Appellant had

*(Footnote Continued)* _____

§ 9, is synonymous with that term. **Commonwealth v. Rose**, 81 A.3d 123, 126 n.2 (Pa.Super. 2013) (*en banc*) *allowance of appeal granted on other ground* __ A.3d __ (Pa. 2014) (filed July 8, 2014) (citing **Craig v. Kline***,* 65 Pa. 399, 413 (1870); **Murray v. Hoboken Land & Imp. Co.***,* 59 U.S. 272, 276 (1855); **Commonwealth v. Harrell***,* 65 A.3d 420, 448 n.10 (Pa.Super. 2013) (Donohue, J. dissenting)).

[8] The PCRA judge that awarded sentencing relief indicated in a September 17, 2009 opinion that neither Appellant nor the Commonwealth alerted it that, because no appeal had been taken, the case needed to be listed for a new penalty hearing. The court had scheduled a new penalty hearing for April 17, 2009. According to the court, Appellant's counsel indicated that it could not proceed to the penalty phase hearing at that time.

an incentive to delay capital resentencing, as he avoided imposition of the death penalty during that time. As more than a year and one-half elapsed between the award of a new sentencing and his motion for a sentence of life imprisonment, Appellant did not timely assert either a speedy trial or due process right to timely resentencing.

Further, once Appellant did seek to be resentenced, he thereafter requested numerous continuances. Although Appellant asserts that the extensions in this matter were continuances of PCRA proceedings and not sentencing, he is mistaken. Here, the continuances, though listed as continuances of PCRA hearings on the docket, were unequivocally unrelated to further PCRA proceedings since Appellant had already achieved PCRA relief. Rather, the purpose of the continuances was to allow counsel an opportunity to adequately prepare for a new penalty phase hearing that would be conducted over twenty-five years after Appellant's original convictions.

Appellant first requested a continuance on October 23, 2009. Subsequently, on March 19, 2010, Appellant again sought a continuance to review voluminous material. The court granted an additional continuance on April 29, 2011, to allow defense counsel to review Appellant's *habeas corpus* file. The Commonwealth and Appellant received a joint continuance to review litigation material on August 19, 2011. The court relisted the matter three additional times in 2011: on September 30, October 21, and

November 18, 2011. On January 13, 2012, the court entered an order indicating that Appellant's attorneys were unavailable until 2013. Appellant's attorneys on that date had filed a continuance motion requesting additional time for further penalty phase preparation. Appellant received yet another continuance on March 15, 2012, based on a request for additional investigation. Slightly over a month later, on April 26, 2012, the trial court granted Appellant a continuance to prepare a motion seeking to preclude the death penalty as well as to prepare for the new penalty phase proceeding.

Thereafter, Appellant filed a motion to bar the death penalty on May 24, 2012, and a continuance motion. On August 16, 2012, the trial court granted a continuance motion because the defense was unready to proceed. The defense filed an additional request for further investigation on September 27, 2012, and the court scheduled the matter for November 15, 2012. On that date, the court listed the case for resentencing as a non-capital matter for December 14, 2012. The court imposed two consecutive life sentences on that date.

Thus, the record conclusively establishes that, once Appellant requested sentencing, it was his own continuance requests that delayed sentencing. Furthermore, we discern no prejudice to Appellant. We disagree with Appellant's assertion that a speedy capital resentencing claim entitles him to discharge where a jury duly convicted him of the underlying murders. Appellant relies on case law that does not involve capital

resentencing. The appropriate remedy would be to preclude imposition of the death penalty, as he himself argued below in his motion for sentencing to life imprisonment, not complete discharge. As the Commonwealth did not seek imposition of the death penalty, Appellant suffered no prejudice due to the alleged delay in his capital resentencing.[9]

While Appellant's constitutional claims fail, the Pennsylvania Supreme Court has accurately noted that Rule 600 provides an "independent bases for asserting a claim of undue delay in appropriate cases." **Solano**, **supra** at 1188 n.7. Rule 600 has never been construed as applying to capital resentencing, likely because defendants rarely seek to expedite the possibility of being sentenced to death. The current version of Rule 600 was not effective until July 1, 2013; therefore, it would be inapplicable even if we

_____

[9] The concurring decision maintains that our discussion of capital resentencing is *dicta*. However, our discussion is necessary to resolve Appellant's issues. Moreover, the fact that Appellant was not capitally sentenced does not render his argument that he was deprived of a constitutional speedy resentencing moot. Appellant's argument is that, because the Commonwealth did not conduct a capital resentencing hearing in a timely fashion, he should be entirely discharged. If there is no constitutional speedy trial right to capital resentencing in the first instance then his claim that he should be discharged would fail on that ground, *i.e*, the constitutional speedy trial protections do not impact capital resentencing. Simply put, if the term "trial" does not include capital resentencing, he had no constitutional right to a speedy capital resentencing hearing. That he was ultimately not resentenced capitally does not make our discussion *dicta* because Appellant's position is that the very failure to conduct a capital sentencing hearing resulted in prejudice and that his ultimate sentence of life imprisonment violated his speedy trial rights. Our discussion would only be *dicta* if we purported to hold that Appellant could not be subject to the death penalty based on the delay, since Appellant is not on death row.

were to find Rule 600 applies. Accordingly, we must look to the version of Rule 600 in effect during the relevant period. That rule provided in its entirety:

(A)(1) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no later than 270 days from the date on which the complaint is filed.

(2) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.

(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.
(4) Trial in a court case that is transferred from the juvenile court to the trial or criminal division shall commence in accordance with the provision set out in paragraphs (A)(2) and (A)(3) except that the time is to run from the date of filing the transfer order.

(B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

(D)(1) When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 120 days after the date of the order granting a new trial, if the defendant is incarcerated on that case. If the defendant has been released on bail, trial shall commence within 365 days of the trial court's order.

(2) When an appellate court has remanded a case to the trial court, if the defendant is incarcerated on that case, trial shall commence within 120 days after the date of remand as it appears in the appellate court docket. If the defendant has been released on bail, trial shall commence within 365 days after the date of remand.

(3) When a trial court has ordered that a defendant's participation in the ARD program be terminated pursuant to Rule 184, trial shall commence within 120 days of the termination order if the defendant is incarcerated on that case. If the defendant has been released on bail, trial shall commence within 365 days of the termination order.

(E) No defendant shall be held in pre-trial incarceration on a given case for a period exceeding 180 days excluding time described in paragraph (C) above. Any defendant held in excess of 180 days is entitled upon petition to immediate release on nominal bail.

(F) Nothing in this rule shall be construed to modify any time limit contained in any statute of limitations.

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

> If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.
>
> In the event the case is dismissed pursuant to this paragraph, the court shall promptly prepare a report of continuances by the Commonwealth, and the reasons therefor, which prevented the case from coming to trial as required by this rule. Such report shall be certified by the president judge or administrative judge, shall be made part of the public record of the case, and shall be sent to the Court Administrator of Pennsylvania within 20 days of the order of discharge.

Pa.R.Crim.P. 600 (effective to July 1, 2013).

We construe criminal rules of procedure based on the Statutory Construction Act. Pa.R.Crim.P. 101(C); **Commonwealth v. Far**, 46 A.3d 709, 712 (Pa. 2012); **Commonwealth v. Williams**, 9 A.3d 613, 618 (Pa. 2010). Accordingly, we must "ascertain and effectuate the intent of the drafters, a task that is best accomplished by considering the plain language of the provision(s) at issue." **Far**, **supra** at 712. Where the "words are not explicit, then the court must consider various other indicia of intent, such as the object and necessity of the rule and the mischief meant to be remedied." **Id**. In interpreting the rules, we "give effect to all their provisions, and a single rule should not be read in a vacuum, especially where there is an

apparent interrelationship among rules." *Id*. "We may consult the explanatory comments of the committee that worked on a rule" to determine its original meaning. *Id*. at 713.

As noted, Appellant contends that the Commonwealth was required to conduct his resentencing within 120 or 365 days of the award of PCRA relief in the nature of a new penalty phase hearing. We find that the term "trial" in Rule 600 does not apply to capital sentencing, let alone resentencing. *Cf. Commonwealth v. Hill*, 422 A.3d 1385, 1388 (Pa.Super. 1980) (in a non-capital case, the court summarily found that Rule 600's predecessor, Rule 1100, "has no relevance to sentencing"). First, the Pennsylvania Supreme Court has promulgated a separate rule that deals with an initial speedy sentencing, Pa.R.Crim.P. 704.[10] Hence, Rule 600 was not intended to apply to an original sentencing proceeding. Pointedly, the Pennsylvania Supreme Court has noted that Rule 600's dismissal provision does not, by its plain language, apply to capital defendants for purposes of an initial trial. *Commonwealth v. Laird*, 988 A.2d 618, 633 (Pa. 2010). Nonetheless, it has applied Rule 600 to the commencement of the initial adjudication of guilt, *see Solano*, *supra*, as well as a guilt phase retrial after the award of federal *habeas* relief. *Laird*, *supra*.

_____

[10] Rule 704 has not been applied to resentencing. *Commonwealth v. Fox*, 953 A.2d 808 (Pa.Super. 2008).

- 25 -

Importantly, the word "trial" in Rule 600, when read in context, does not apply to capital sentencing or capital resentencing after the grant of PCRA relief. Rule 600(A) used the term "trial" to denote the beginning of the proceeding for an adjudication of guilt. Similarly, Rule 600(B) indicated that a trial began when the case was called for trial, or the defendant entered a plea. The reference to pleas in conjunction with when a case is called for trial plainly connotes that the Supreme Court intended to refer to a trial proceeding under the common understanding of the term and not to capital sentencing. Rule 600(C)(1) also unequivocally is directed toward the ordinary understanding of the word "trial." Concomitantly, Rule 600(D)(3), which applies to ARD, uses the phrase "trial" in its ordinary sense. Further, Rule 600(E) has no application to capital defendants. *See* Pa. Const. Art. I, § 14 (precluding bail for murder defendants); *see also Commonwealth v. Hill*, 736 A.2d 578, 583 (Pa. 1999); *cf*. *Commonwealth v. Sloan*, 907 A.2d 460 (Pa. 2006).

As discussed, Rule 600(G), the discharge provision of Rule 600, does not, by its plain language, apply to capital defendants since they are not on bail or eligible for bail. Only through court rulings has this portion of the rule been extended to the initial trial proceeding. Thus, we are left with Rule 600(D)(1) and (2). Appellant's argument relates to Rule 600(D)(1). That provision sets forth that "[w]hen a trial court" grants a new trial and no appeal follows, "the new trial shall commence within 120 days after the date

of the order granting a new trial, if the defendant is incarcerated on that case. If the defendant has been released on bail, trial shall commence within 365 days of the trial court's order." Former Rule 600(D)(1).

The fact that a longer period is granted for those on bail than those incarcerated strongly suggests that the rule was not intended to apply to the arduous task of capital resentencing proceedings after PCRA relief, which require lengthy and intensive preparation. Also, the court that awarded sentencing relief herein was not acting in its capacity as the criminal trial judge, but as a PCRA court during collateral proceedings. Hence, it can be said that no new sentencing was granted by a trial court. Rule 600(D)(1) was intended to apply to the situation where a trial court awards a new trial before the period for filing a direct appeal, not capital resentencing after the grant of PCRA relief.

We add that the purpose behind Rule 600 and the mischief to be remedied was not delay in capital resentencing cases. The Pennsylvania Supreme Court enacted the predecessor to Rule 600, Rule 1100, to address delay in the commencement of initial trial proceedings. ***See Commonwealth v. Hamilton***, 297 A.2d 127 (Pa. 1972) (calling for adoption of procedural rule addressing setting a maximum time to bring a defendant to trial after the institution of charges); ***see also Hill***, 736 A.2d at 580 (discussing Rule 1100 and stating the rule, "is intended to reduce the backlog of cases awaiting trial and to 'formulate a rule of criminal procedure

fixing a maximum time limit' to bring an accused to trial."). For all of these reasons, we hold that former Rule 600(D)(1) does not apply to resentencing after the award of post-conviction relief.[11]

Having resolved Appellant's initial issue, we proceed to his second claim. Appellant alleges that his speedy appeal rights, due process and equal protection rights were violated by the trial court's failure to provide him with a full and complete record. This issue is meritless. Initially, we note that Appellant's appeal has not been unnecessarily delayed. Further,

_____

[11] The concurring author concludes that our Rule 600 analysis is *dicta*. This misapprehends both Appellant's argument and the definition of *dicta*. Appellant's claim is that he should be discharged under Rule 600 because he was not resentenced, either capitally or to life imprisonment, within the appropriate Rule 600 time-frame. That issue fails because Rule 600 does not apply to sentencing procedures after the award of PCRA sentencing relief.

We are aware that we have discussed that capital resentencing falls within the constitutional speedy trial and due process protections but not the criminal speedy trial procedural rule. Contrary to the concurrence's suggestion, there is nothing incongruous about finding that Rule 600 does not apply and the respective constitutional provisions do because Rule 600 was intended to offer greater protections. The concurrence simply ignores the intent of Rule 600. It is immaterial that Rule 600 was intended to offer greater protections than the respective constitutional provisions for the period between when a person is charged and brought to trial. Rule 600 was not intended to apply at all to the sentencing situation presented herein. Thus, since Rule 600 has no application to resentencing under these facts it is a *non-sequitur* that Rule 600 generally provides more protection than the constitutional speedy trial clauses. Pointedly, the meaning of the term "trial" for each is based on differing considerations. Indeed, we have noted that the original public meaning of the word "trial" did not encompass sentencing and it is only as a result of the bifurcation of capital cases by statute and the historical role of a jury that capital sentencing would be included within the constitutional speedy jury trial rights in Pennsylvania.

our review of Appellant's resentencing claims has not been impeded by the lack of any purported transcripts. Moreover, there would not be any transcripts relative to continuances, which appears to be Appellant's primary complaint, and transcripts pertaining to the trial and original sentencing, which are part of the record, are unnecessary to resolve his current issues. Appellant's briefing could not be inhibited by the lack of non-existent transcripts for continuances, and his appeal has not been unnecessarily delayed.

Judgment of sentence affirmed.

Judge Wecht files a Concurring Memorandum in which Justice Fitzgerald Concurs in the Result.

Justice Fitzgerald Concurs in the Result in this Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014