# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevan M. Alston, Jr.,             :
                Petitioner     :
                           :
         v.                :    No. 1924 C.D. 2014
                           :    No. 2042 C.D. 2014
                           :    Submitted: September 2, 2016
Pennsylvania Board of Probation    :
and Parole,                     :
              Respondent   :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE ANNE E. COVEY, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                 **FILED: November 28, 2016**

In these consolidated appeals, Kevan M. Alston, Jr. (Alston) petitions for review of the September 24, 2014 and October 28, 2014 Orders of the Pennsylvania Board of Probation and Parole (Board) denying his requests for administrative relief. On appeal, Alston argues that the Board erred in imposing 18 months backtime due to his recommitment as a convicted parole violator (CPV) and improperly recalculated his maximum date by not giving him the appropriate amount of credit toward his sentence. Alston also asserts that the Board committed an error of law and violated Alston's constitutional due process rights by, *inter alia*, failing to timely respond to his requests for administrative relief.

Alston's court appointed counsel had previously filed an Application for Leave to Withdraw as Counsel, which we denied in <u>Alston v. Pennsylvania Board of Probation and Parole</u> (Pa. Cmwlth., Nos. 1924, 2042 C.D. 2014, filed July 16, 2015) (<u>Alston I</u>). Because of the state of the certified record, the Board filed a supplemental record on July 30, 2015 (Supplemental C.R. I). Alston's counsel filed a brief on the merits of the Petitions for Review. The Board requested a remand in its responsive brief, based on its belief that the Board's maximum sentence date of May 18, 2020, may not have been correct. This Court remanded to the Board for an evidentiary hearing and retained jurisdiction. The Board held an evidentiary hearing at which Alston and his counsel appeared. The Board issued a supplemental decision, which recalculated his maximum date to June 12, 2020, so as not to give credit for time during which Alston had absconded from supervision. Although we provided Alston with an opportunity to challenge the Board's recalculation, we have not received any response. Upon review, we find the Board did not err in its calculation of Alston's maximum date, has given him appropriate credit, and has not violated his due process rights. Because we retained jurisdiction, the Board did not officially change Alston's maximum date, and therefore, we remand for the Board to do so.

## I.    History

The lengthy history of this case was described in <u>Alston I</u> as follows:

> On September 30, 1998, Alston pled guilty to several charges of robbery with serious bodily injury and was sentenced to 10 to 20 years. (Sentence Status Summary, C.R. at 1-3.) After being paroled in January 2010 and recommitted in September 2011 as a technical parole violator [(TPV)], Alston was reparoled on April 26, 2012 with a parole violation maximum date of January 7, 2018. (Notice of Board Decision, Jan[.] 11, 2010, C.R. at 10-11; Notice of Board

2

Decision, September 26, 2011, C.R. at 19; Notice of Board Decision, Mar[.] 9, 2012, C.R. at 20-21.) While on parole, Alston was charged with new criminal charges [for simple assault and resisting arrest] in Lehigh County on January 28, 2013 for which he pled *nolo contendere* on September 20, 2013.[1] (Criminal Docket, C.R. at 44-53.) As a result, Alston was sentenced to time served with immediate parole and twelve months' probation. (Criminal Docket, C.R. at 51.)[2]

By Board decision mailed December 24, 2013, Alston was recommitted as a technical parole violator to serve six months backtime and "as a convicted parole violator to serve 18 months concurrently for a total of 18 months backtime, when available[,] pending receipt of additional information." (Notice of Board Decision, Dec[.] 24, 2013, C.R. at 35.) The Board's December 24, 2013 decision also denied Alston reparole. (Notice of Board Decision, Dec[.] 24, 2013, C.R. at 35.) On January 22, 2014, the Board received Alston's pro se Request for Administrative Relief challenging the Board imposition of 18 months backtime and the denial of reparole. (Board Decision/Order, Sept[.] 24, 2014, C.R. at 41.) By Decision/Order mailed September 24, 2014, the Board advised Alston as follows:

> You waived your hearing rights and admitted to
> being convicted of the offenses of Simple Assault (M2)

---

[1] Alston also was arrested for driving under the influence of alcohol or controlled substance (DUI) on February 13, 2013. (Criminal Docket CP-39-CR-0000724-2013 at 2, Supplemental C.R. I at 107.) The Board concluded that he was released on his own recognizance (ROR) bail on the same day and was held solely on the Board's warrant thereafter. (Notice of Board Decision, Feb. 14, 2014, at 1, Supplemental C.R. I at 144; Hr'g Tr., Apr. 1, 2016, at 22-25, Board's Supplemental Certified Record II (Supplemental C.R. II) at 53a-56a; Supplemental Board Letter, Apr. 28, 2016, at 4, Supplemental C.R. II at 77a.) Alston initially was granted Accelerated Rehabilitative Disposition (ARD) for the DUI, but his ARD was revoked. (Criminal Docket CP-39-CR-0000724-2013 at 3-6, Supplemental C.R. I at 108-11.) He pleaded guilty to the DUI charge on October 24, 2013, and received six months probation. (Id. at 7, Supplemental C.R. I at 112.)

[2] By Board decision mailed on October 18, 2013, the Board detained Alston pending the resolution of his criminal charges, recommitted Alston as a TPV to serve 6 months backtime, and recalculated Alston's maximum date to May 28, 2018, to include 141 days Alston was delinquent on parole. (Order to Recommit, Supplemental C.R. I at 84; Notice of Board Decision, Oct. 18, 2013, Supplemental C.R. I at 86-88.) The October 18, 2013 Decision indicated that Alston's new maximum date was "subject to change if convicted of outstanding criminal charges." (Notice of Board Decision, Oct. 18, 2013, at 3, Supplemental C.R. I at 88.)

and Resisting Arrest (M2) in violation of your parole in writing on September 25, 2013. The waiver/admission form you signed specifically indicates that you chose to take said action of your own free will, without promise, threat or coercion. You also failed to withdraw the waiver/admission within the prescribed ten-day grace period. This admission gave the Board sufficient evidence to revoke your parole. Furthermore, you specifically waived your right to counsel at your hearings.

The Board recommitted you as a **convicted** parole violator to serve 18 months for the offenses of Simple Assault and Resisting Arrest. The presumptive recommitment range for the offense of Simple Assault is 9 to 15 months and for Resisting Arrest is 6 to 12 months, respectively. 37 Pa. Code § 75.2. This means that the maximum term the Board could impose that would fall within the presumptive range is 27 months. Thus, the 18-month recommitment term falls within the presumptive range and is not subject to challenge. *Smith v. Pennsylvania Board of Probation and Parole*, 574 A.2d 558 (Pa. 1990).

(Board Decision/Order, Sept[.] 24, 2014, C.R. at 41 (emphasis in original).) Accordingly, the Board denied Alston's pro se Request for Administrative Relief. ([Id.])

By decision mailed February 14, 2014, the Board referred to its prior actions recommitting Alston as both a technical parole violator and convicted parole violator to serve 18 months concurrently for a total of 18 months backtime and advised Alston that his new parole violation maximum date was May 18, 2020. (Notice of Board Decision, Feb[.] 14, 2014, C.R. at 37.) On March 4, 2014, the Board received a pro se "Notice of Appeal" from Alston challenging the recalculation of his parole violation date and alleging that the "calculation was done without due process of law as here, [he] was not afforded a parole violation hearing as guaranteed by the fifth amendment to the constitution." (Notice of Appeal, C.R. at 40.) By Decision/Order mailed October 28, 2014, the Board explained to Alston how his parole violation maximum date was calculated as May 18, 2020 and affirmed its decision mailed February 14, 2014. (Board Decision/Order, Oct[.] 28, 2014, C.R. at 54-55.)

4

. . .

On September 5, 2014, Alston, through Attorney [Kent D.] Watkins, [Esquire] filed with this Court a "Petition for Review (In the Nature of a Complaint in Mandamus)" (Mandamus Petition) alleging that it had been more than 120 days since Alston filed his January 22, 2014 Request for Administrative Relief and his March 4, 2014 Notice of Appeal and seeking an order from this Court directing the Board to act on Alston's requests for administrative relief. After the Board issued its September 24, 2014 Order denying Alston's pro se January 22, 2014 Request for Administrative Relief, the Board filed an application to dismiss Alston's Mandamus Petition for mootness. Upon consideration of the Board's application and Alston's answer thereto, this Court denied the Board's application by Order entered October 23, 2014. Alston v. P[a.] B[d.] of Prob[.] and Parole (Pa. Cmwlth., No. 463 M.D. 2014, filed Oct[.] 23, 2014). After the Board issued its October 28, 2014 Order denying Alston's pro se March 4, 2014 Notice of Appeal, the Board filed an amended application to dismiss Alston's Mandamus Petition as moot. Upon consideration, this Court granted the Board's amended application and dismissed Alston's Mandamus Petition by Order entered November 14, 2014, because the Board had responded to Alston's administrative appeals thereby providing Alston with the relief he requested. Alston v. P[a.] B[d.] of Prob[.] and Parole (Pa. Cmwlth., No. 463 M.D. 2014, filed Nov[.] 14, 2014).

On October 24, 2014, Alston, through Attorney Watkins, filed a Petition for Review with this Court which was docketed at 1924 C.D. 2014. Therein, Alston seeks an order vacating the Board's December 24, 2013 action revoking his parole and its February 14, 2014 decision recalculating Alston's parole violation maximum date based on the Board's "actions in failing to timely respond to [Alston's] administrative appeal" of the Board's decision mailed February 14, 2014. (Petition for Review, 1924 C.D. 2014, ¶ 12.) Alston alleges that he "has the right to timely be heard" and that the Board's failure "to timely reply to [his] administrative appeals . . . has . . . [required him] to institute multiple court actions in order to receive a reply to his timely filed administrative appeal." (Petition for Review, 1924 C.D. 2014, ¶¶ 13, 15.) Alston alleges that the Board's actions in failing to timely respond to this administrative appeal constitute an error of law and a violation of his constitutional rights. (Petition for Review, 1924 C.D. 2014, ¶ 12.)

On November 12, 2014 Alston, through Attorney Watkins, filed an additional Petition for Review with this Court which was docketed

at 2042 C.D. 2014. Therein, Alston seeks review of the Board's October 28, 2014 Order denying his "Notice of Appeal" from the Board's decision mailed February 14, 2014. (Petition for Review, 2042 C.D. 2014, ¶ 4.) Alston alleges that the Board "failed to give [him] credit for all time served exclusively pursuant to the [B]oard's warrant." (Petition for Review, 2042 C.D. 2014, ¶ 5.)

Alston I, slip op. at 2-6 (footnotes omitted). In Alston I, we denied the Application to Withdraw on the basis that counsel had not satisfied the requirements of a no-merit letter under Commonwealth v. Turner, 544 A.2d 927, 928 (Pa. 1988) and Zerby v. Shanon, 964 A.2d 956, 960 (Pa. Cmwlth. 2009). Alston I, slip op. at 7-8. While counsel discussed "whether Alston's parole violation maximum date was correctly recalculated by the Board and whether the 18 month recommitment period imposed by the Board is within the presumptive range, he does not address any of the issues raised in the Petition for Review filed at docket number 1924 C.D. 2014." Id. at 8. Thus, we did not address the merits of Alston's Petitions for Review and directed counsel to file either a new application to withdraw or a brief on the merits. Id. at 9, Order.

We further observed in Alston I that: the certified record was missing certain documents, documents were incomplete, and there were some factual discrepancies left unresolved by the Board's decisions and counsel's no-merit letter. Id. at 8-9 n.4.[3] The Court then directed the Board to certify a second volume of the certified record consisting of:

---

[3] Specifically, we observed:

We note that the factual background relating to the time that Alston was released on parole on April 26, 2012 until the time he was sentenced on new criminal charges on September 20, 2013, particularly where and when he was incarcerated after being charged on January 28, 2013 with new criminal charges, is unclear from the certified record filed with this Court. Thus, it is questionable whether the Board correctly calculated Alston's parole violation maximum date.

6

1. [Alston's] pro se Request for Administrative Relief;
2. Documentation regarding whether, and if so, where [Alston] was incarcerated between April 26, 2012 and September 20, 2013;
3. The dated and signed Notice of Charges and Hearing issued by the Board, or other notification of the scheduling, that is, times and dates, of the preliminary and detention hearings;
4. The waiver/admission form that [Alston] allegedly signed waiving his right to counsel at the hearings;

---

For example, the Board gave Alston 86 days credit for the period he was incarcerated from February 13, 2013 to May 10, 2013 because he was incarcerated solely on the Board's detainer; however, the Board also stated that Alston was erroneously released from incarceration from the Lehigh County Prison on April 15, 2013 after posting bail despite the Board's existing detainer against him. (Board Decision/Order, Oct[.] 28, 2014, C.R. at 54-55.) Whether Alston was actually incarcerated between April 15, 2013 and the date of his conviction on September 20, 2013 is unclear because not only was Alston declared delinquent on April 15, 2013, the certified record indicates that Alston turned himself in to the Lehigh County authorities on September 3, 2013. (Supervision History, C.R. at 29-30.) These apparent discrepancies are not explained by Attorney Watkins in his no-merit letter.

In addition, it appears that there are several documents missing from the certified record and that the documents that are contained therein are not complete. For example, the Notice of Charges and Hearing issued by the Board to Alston charging him with the new criminal charges and technical parole violations is undated and unsigned and is missing the time and date of the preliminary and detention hearings. (Notice of Charges [and Hearing], C.R. at 31.) There is no document in the certified record that actually schedules any type of hearing on these charges. Also missing from the certified record is the waiver/admission form that Alston allegedly signed waiving his right to counsel at the hearings. (Board Decision/Order, Sept[.] 24, 2014, C.R. at 41.) As such, the Board's determination set forth in its September 24, 2014 Decision/Order that Alston waived his hearing rights, is not supported by the certified record. Further, the Board's December 24, 2013 and February [14], 2014 decisions do not contain any indication as to the actual date these decisions were mailed. We ascertained the mailing dates from the Board's September 24, 2014 and October 28, 2014 denials of Alston's Requests for Administrative Relief and Notice of Appeal, respectively. Given that this Court's ability to perform effective appellate review is dependent on having complete and accurate records to review, it would be helpful if the records certified to the Court by the Board were more accurate.

Alston I, slip op. at 8-9 n.4.

7

5. Indications of the mailing dates of the Board's December 24, 2013 and February [14], 2014 decisions; and
6. Those other parts of the original record that were not previously forwarded to the Court but were relied upon by [the Board] in reaching its decisions in these matters.

(Per Curiam Order, July 17, 2015.) The Board filed the Supplemental C.R. I, consisting of approximately 145 pages of record materials, with this Court on July 30, 2015.

## II. Remand for Evidentiary Hearing

Alston's counsel filed a brief on the merits of the Petitions for Review, and the Board filed a responsive brief, arguing, *inter alia*, that Alston's due process rights were not violated under these circumstances and requesting a remand based on its belief that it was "not convinced that the Board's Original Sentence maximum date of May 18, 2020 is correct." (Board Br.'s at 16.) By Per Curiam Order dated March 18, 2016, this Court remanded the matter to the Board for "an evidentiary hearing to determine certain facts critical to the proper calculation of [Alston's] maximum date." (Per Curiam Order, Mar. 18, 2016.) In light of Alston's alleged due process concerns, this Court, as suggested by the Board's counsel in its brief, retained jurisdiction while on remand. (Id.; Board's Br. at 16-17.) The Board held the evidentiary hearing, at which Alston and his counsel appeared and presented evidence, and mailed a decision to Alston on April 20, 2016. (Notice of Board Decision, Board's Supplemental Certified Record II (Supplemental C.R. II) at 69a-71a.) The Board sent a letter on April 28, 2016, to supplement the Board decision mailed April 20, 2016, and recertified the record

(Supplemental C.R. II) with this Court on April 28, 2016. (Supplemental Board Letter, Supplemental C.R. II at 74a-77a.)

Based on the evidence presented at the hearing and the existing record, the Board concluded that Alston was entitled to 61 days of sentence credit from February 13, 2013 to April 15, 2013, because this was the period during which he was confined solely on the Board's warrant. On February 13, 2013, Alston was arrested for driving under the influence of alcohol or controlled substance (DUI). (Criminal Docket CP-39-CR-0000724-2013 at 2, Supplemental C.R. I at 107; Hr'g Tr. at 18, 21-22, Supplemental C.R. II at 49a, 52a-53a.) The Board issued a warrant to commit and detain Alston based on the DUI charge also on February 13, 2013.[4] (Warrant to Commit and Detain, Supplemental C.R. I at 34.) While confined on the Board's warrant, Alston was arrested for the simple assault and

---

[4] It is not entirely clear whether Alston posted bail on the DUI charge. Some documents indicate that he did not post bail, but Alston testified that he did post bail on February 13, 2013, a fact the Board appears to have accepted both at the hearing and in its February 14, 2014 Decision. (Notice of Board Decision, Feb. 14, 2014, Supplemental C.R. I at 144; Order to Recommit, Supplemental C.R. I at 130; Hr'g Tr. at 21-25, Supplemental C.R. II at 52a-56a.) However, even if Alston did not post bail on that date, he was entitled to receive credit for all of his time in custody. Martin v. Pa. Bd. of Prob. and Parole, 840 A.2d 299, 304 (Pa. 2003) (citing Gaito v. Pa. Bd. of Prob. and Parole, 412 A.2d 568, 571 n.6 (Pa. 1980)). "[I]f a parolee is acquitted, *or if no new sentence is imposed for a conviction on the new charges*, pre-trial custody is to be applied to the parolee's original sentence," and a parolee must be given credit for all periods of confinement where, *inter alia*, the "confinement is the result of both a Board warrant and pending criminal charges" and "where there is no period of incarceration imposed." Id. at 305, 309 (emphasis added). Here, Alston received no period of incarceration for the DUI charge; he initially was sentenced to ARD and, after that was revoked, he ultimately received six months probation. (Criminal Docket CP-39-CR-0000724-2013 at 3-7, Supplemental C.R. I at 108-12.) Because Alston was entitled to credit for the pre-sentence time he was being held on the Board's warrant, and possibly on the DUI charge, from February 13, 2013 to April 15, 2013 (when he was arrested on the simple assault and resisting arrest charges, posted bail on those charges, and absconded), and he was not sentenced to a period of incarceration, that time was rightly credited toward his original sentence. Martin, 840 A.2d at 305, 307. Thus, any error in the Board's finding that Alston was being held solely on its warrant based on Alston's posting of bail for the DUI charge is harmless.

9

resisting arrest on April 15, 2013, and Alston was released on his own recognizance (ROR) bail. (Criminal Docket CP-39-CR-0001325-2013 at 2, 4-5, Supplemental C.R. I at 84, 96-97; Hr'g Tr. at 21, 24-25, Supplemental C.R. II at 52a, 55a-56a.) Notwithstanding the Board's existing warrant, Alston was released from prison on April 15, 2013, absconded from parole supervision, and remained delinquent until he turned himself in on September 3, 2013. (Hr'g Tr. at 25-27, Supplemental C.R. II at 56a-58a.) "Subtracting 61 days from the 2,518 days [remaining] results in Mr. Alston owing 2,457 days," and adding those days to September 20, 2013, the date when Alston was granted parole from his conviction for simple assault and resisting arrest and returned to the Department of Corrections (DOC), would result in a new maximum date of June 12, 2020. (Notice of Board Decision, Apr. 20, 2016, Supplemental C.R. II at 69a-71a; Order to Recommit, Supplemental C.R. II at 72a; Supplemental Board Letter, Apr. 28, 2016, Supplemental C.R. II at 74a-77a.) The Board did not officially change Alston's maximum date from May 18, 2020 to June 12, 2020, because this Court retained jurisdiction. (Supplemental Board Letter (Apr. 28, 2016) at 4, Supplemental C.R. II at 77a.) Although given an opportunity to respond to the Board's supplemental decision and recalculation of Alston's maximum date, Alston has not filed a brief or response and, therefore, this matter is ready for our determination.[5, 6]

---

[5] By Per Curiam Order dated July 28, 2016, we directed Alston to file a response within 30 days of the Order or we would "proceed to make a determination without the benefit of [Alston's] response." (Per Curiam Order, July 28, 2016.)

[6] In reviewing the Board's orders, our review "is limited to determining whether the Board's findings are supported by substantial evidence, [whether] an error of law [was] committed, or whether any of the parolee's constitutional rights were violated." Andrews v. Pa. Bd. of Prob. and Parole, 516 A.2d 838, 841, n.10 (Pa. Cmwlth. 1986).

### III. Issues Now Before this Court

    *a.    Recommitment as a CPV to Serve 18 Months Backtime and Recalculation of Alston's Maximum Date*

We first address the issues related to Alston's recommitment as a CPV to serve 18 months backtime and the recalculation of his maximum date. Alston objects to his being recommitted for a period of 18 months backtime based on his conviction for simple assault and resisting arrest. (Supplemental C.R. I at 125-26.) However, as acknowledged in Alston's brief, the 18 months of backtime falls within the combined presumptive ranges for recommitment for simple assault (9 to 15 months) and resisting arrest (6 to 12 months). 37 Pa. Code § 75.2. "As long as the period of recommitment is within the presumptive range for the violation, the Commonwealth Court will not entertain challenges to the propriety of the term of recommitment." Smith v. Pa. Bd. of Prob. and Parole, 574 A.2d 558, 560 (Pa. 1990).

We now turn to the recalculation of Alston's maximum date. As discussed above, the Board issued a supplemental determination recalculating Alston's maximum date to June 12, 2020, and Alston has not responded to the Board's new recalculation to assert that it is erroneous. We will, therefore, only review Alston's arguments contained in his initial brief to this Court. Alston argues that the Board erred in not giving him credit for his time spent at liberty on parole and recomputing his maximum date based on his conviction for DUI in its February 14, 2014 Decision even though his parole was not revoked based on that conviction, and he did not waive the revocation hearing for that conviction. (Alston's Br. at 16.) Alston observes that, although the Board indicated in its February 14, 2014 Decision that it noted the DUI conviction and chose to not take action on that conviction, the Board nevertheless forfeited Alston's time spent at liberty on parole

11

and recalculated his maximum date as May 18, 2020, which Alston maintains was based on this new conviction. (Notice of Board Decision, Feb. 14, 2014, Supplemental C.R. I at 129.) Therefore, Alston argues that the Board erred in recalculating his maximum date and that he is entitled to credit for 285 days for his time at liberty on parole.

The Board responds that the revocation of Alston's parole, recommitment as a CPV, forfeiture of his time at liberty on parole, and recalculation of Alston's maximum date were based on his pleading *nolo contendere* on September 20, 2013, to simple assault and resisting arrest and not the DUI conviction as Alston asserts. According to the Board, Alston waived his revocation hearing, acknowledged his conviction for simple assault and resisting arrest, and the Board's actions, therefore, were not erroneous.

Section 6138(a) of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. § 6138(a),[7] authorizes the Board to recommit a parolee who is convicted of a crime

---

[7] Section 6138(a) of the Parole Code provides, in relevant part, that:

(1) A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.

(2) If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

61 Pa. C.S. §§ 6138(a)(1)-(2). Although the Board has the discretion to award credit for time spent at liberty on parole unless the crime committed while on parole was a crime of violence or required registration on a sex offender's registry, it did not do so here. 61 Pa. C.S. § 6138(a)(2.1)(i).

12

punishable by imprisonment that was committed while on parole and to deny credit for time served at liberty on parole for a parolee who is recommitted as a CPV. See also Gaito v. Pa. Bd. of Prob. and Parole, 412 A.2d 568, 570 (Pa. 1980) (holding that the forfeiture of credit for time served at liberty on parole for a CPV is not unconstitutional). After a thorough review of the certified records in this case, the records reveal that Alston waived the revocation hearing based on his pleading *nolo contendere* on September 20, 2013, to simple assault and resisting arrest and acknowledged his new conviction. (Criminal Docket CP-39-CR-0001325-2013 at 1, 7, Supplemental C.R. I at 95, 99; Waiver of Revocation Hearing and Counsel/Admission Form, Supplemental C.R. I at 83; Hearing Report, Supplemental C.R. I at 116-18.) The Board revoked Alston's parole and denied him credit for time spent at liberty on parole *based on that conviction*. (Hearing Report, Supplemental C.R. I at 117-19, 123.) In its December 24, 2013 Decision, the Board recommitted Alston as a CPV based on the conviction for simple assault and resisting arrest and ordered him to serve 18 months backtime, "*when available pending receipt of additional information*." (Notice of Board Decision, Dec. 24, 2013, Supplemental C.R. I at 125 (emphasis added).) The December 24, 2013 Decision indicated that, in addition to recommitting Alston as a CPV for 18 months, it was modifying its prior October 18, 2013 Decision, which had recommitted Alston as a TPV, declared Alston delinquent for 141 days, and recalculated Alston's maximum date to May 28, 2018 (based on those 141 days), by deleting the reparole provision and adding an additional 6 months of backtime for a new technical violation. (Id.) The December 24, 2013 Decision did not, on its face, change Alston's parole violation maximum date from May 28, 2018 to May 18, 2020, based on the new conviction for simple assault and resisting arrest.

13

(Id.)  Rather, it was the Board's February 14, 2014 Decision that advised Alston of his new maximum date of May 18, 2020.  (Id. at 129.)

A review of the February 14, 2014 Decision shows that the change in Alston's maximum date was based on his admitted conviction for simple assault and resisting arrest, and not the DUI conviction for which the Board chose to take no action.  (Notice of Board Decision, Feb. 14, 2014, Supplemental C.R. I at 129; Order to Recommit, Supplemental C.R. I at 130-31.)  While the Board's December 24, 2013 Decision addressing Alston's recommitment as a CPV did not change Alston's maximum date, it appears that the Board was waiting for "additional information" before recalculating Alston's maximum date to include the forfeiture of his time at liberty on parole based on Alston's being recommitted as a CPV for his conviction for simple assault and resisting arrest.  The Board received the information for which it was waiting, presumably information related to Alston's DUI charge and, thereafter, issued the February 14, 2014 Decision.  In that decision, the Board noted the DUI conviction, but declined to take action on it, and, referring to, *inter alia*, its prior December 24, 2013 Decision recommitting Alston as a CPV for 18 months, recalculated Alston's maximum date from May 28, 2018 to May 18, 2020, based on the simple assault and resisting arrest conviction.  We discern no error because the Board's recalculation of Alston's maximum date and denial of credit for time at liberty on parole were based on Alston being recommitted as a CPV based on that admitted conviction as authorized by Section 6138(a) of the Parole Code and Gaito.[8]

---

[8] Although Alston has not challenged whether the Board correctly recalculated Alston's maximum date from May 18, 2020 to June 12, 2020, we have reviewed the record and find that the Board did not err.  Alston admitted that he absconded from supervision of the Board on April 15, 2013, and did not return to custody until September 3, 2013; he is therefore not entitled to credit for that time period.  (Hr'g Tr. 26-27, Supplemental C.R. II at 56a-57a.)

14

### b. *Alston's Due Process Rights*

Finally, we address Alston's claims that the Board violated his constitutional rights to due process. Alston argues that the Board committed an error of law and violated his constitutional right to due process by causing a delay in the appellate process where the Board: failed to timely respond to or answer Alston's requests for administrative relief; filed multiple Board actions without responding to Alston's previous appeals causing Alston to file multiple appeals on the same or similar issues; and submitted conflicting certified records to this Court. Alston asserts that parole revocation hearings are subject to the Administrative Law and Procedure Act (Administrative Law Act), 2 Pa. C.S. §§ 101-754, which provides for a two-tier process for parole revocations: "[f]irst, a factual record is made and an initial decision is rendered at a parole revocation hearing"; and second, "[a] parolee can then appeal this decision to the Board by filing for administrative relief." Goods v. Pa. Bd. of Prob. and Parole, 912 A.2d 226, 232 (Pa. 2006); 37 Pa. Code § 71.4(2)(v). Alston acknowledges that neither the Parole Code nor the Board's regulations set time limitations on making either of these determinations, but he argues that this allows the Board to issue multiple actions, rendering filed appeals void, restarting the appeal period for the parolee, and beginning the process for the parolee over again. This, Alston contends, interferes with his due process rights in having an adequate and effective appeal. (Alston's Br. at 11-12, citing Com. v. Glover, 458 A.2d 935, 937 (Pa. 1983).) According to Alston, the Board's ongoing delays under this process have placed Alston "in a position where, even if he were afforded the relief he was seeking, he would not have enough time to have the requested relief credited to his sentence or his appeal

would be dismissed as moot because his maximum sentence would be completed." (Alston's Br. at 12.)

The Board responds that any delays in issuing its orders in response to Alston's requests for administrative review did not violate Alston's due process rights. Citing Section 6113(d) of the Parole Code and Section 73.1(a) of its regulations, the Board notes that although these provisions set forth procedures for appeals, neither establish a time period for responding to a request for administrative review or appeal. 61 Pa. C.S. § 6113(d);[9] 37 Pa. Code § 73.1(a).[10]

---

[9] Section 6113(d) of the Parole Code provides that:

>    (1) An interested party may appeal a revocation decision within 30 days of the board's order. The decision shall be reviewed by three board members appointed by the chairperson or the chairperson's designee.
>
>    (2) If practicable, at least two of the board members reviewing the decision must not have been on the panel whose decision is being appealed. The three board members deciding the appeal may affirm, reverse or remand the decision of the panel or may order the matter be heard de novo.

61 Pa. C.S. §§ 6113(d)(1)-(2).

[10] Section 73.1(a) of the Board's regulations states:

>    (a) Appeals.
>
>    (1) An interested party, by counsel unless unrepresented, may appeal a revocation decision. Appeals shall be received at the Board's Central Office within 30 days of the mailing date of the Board's order. When a timely appeal of a revocation decision has been filed, the revocation decision will not be deemed final for purpose of appeal to a court until the Board has mailed its decision on the appeal. This subsection supersedes 1 Pa. Code § 35.226 (relating to final orders).
>
>    (2) The scope of review of an appeal will be limited to whether the decision is supported by substantial evidence, an error of law has been committed or there has been a violation of constitutional law.

16

The Board argues that this Court held in Slotcavage v. Pennsylvania Board of Probation and Parole, 745 A.2d 89, 91 n.3 (Pa. Cmwlth. 2000), that a six-month delay in a Board decision did not violate due process and that even if it did, the relief would be a mandamus order directing the Board to issue a decision, not the reversal of the decision.

To establish a due process violation based on a delay in the appellate process, an appellant must prove both that "*his cause was prejudiced by the delay . . . . [and] . . . that the state's action in causing or allowing the delay was fundamentally unfair, not merely undesirable.*" Com. v. Anders, 725 A.2d 170, 172 (Pa. 1999) (internal quotations omitted) (emphasis added). "This prejudice is defined as affecting the various interests in facilitating prompt appeals which are: (1) preventing oppressive incarceration pending appeal; (2) minimizing the anxiety of persons awaiting the outcome of the appeal; and (3) limiting the possibility that grounds for appeal, or defenses in the event of reversal and retrial, will be impaired." Com. v. Rosarius, 771 A.2d 29, 31 (Pa. Super. 2001) (citing Com. v. Glass, 586 A.2d 369, 373 (Pa. 1991), abrogated on other grounds by Betterman v. Montana, __ U.S. __, 136 S. Ct. 1609 (2016)). Our Supreme Court's "approach has always been to determine whether there has *in fact* been prejudice, rather than

---

(3) The failure of an appeal to present with accuracy, brevity, clearness and specificity whatever is essential to a ready and adequate understanding of the factual and legal points requiring consideration will be a sufficient reason for denying the appeal.

(4) Second or subsequent appeals and appeals which are out of time under these rules will not be received.

37 Pa. Code §§ 73.1(a)(1)-(4).

17

to presume that prejudice exists." Glass, 586 A.2d at 372 (emphasis in original) (citations omitted).

In Slotcavage, the Board revoked the parolee's parole and recommitted him as a TPV and CPV based on his conviction for federal charges. Slotcavage, 745 A.2d at 90. The parolee filed an administrative appeal on September 8, 1998, to which no response was received by January 11, 1999. As here, the parolee filed a petition for review/mandamus action in this Court's original jurisdiction seeking an order directing the Board to issue a decision, but prior to this Court acting on the petition, the Board issued its decision denying the appeal. We, therefore, dismissed the petition as moot. The parolee appealed the Board's denial, arguing that the Board's six-month delay in issuing its decision on his administrative appeal violated his equal protection and due process rights under the United States and Pennsylvania Constitutions. We held that even if the six months was an unreasonable amount of time, the parolee did not suffer any actual prejudice by the delay and, therefore, his due process rights were not violated. Id. at 92. Citing Sanders v. Pennsylvania Board of Probation and Parole, 651 A.2d 663, 667 (Pa. Cmwlth. 1994), in which this Court held that because the Parole Code and regulations do not provide a time frame for decisions, there was "'no basis . . . for requiring the Board to dismiss with prejudice the allegations underlying the revocation hearing,'" we concluded, in Slotcavage, that "[e]ven when the Board fails to issue a timely decision, that does not mean that its decision would be reversed; it would only mean that a mandamus order would be issued for the Board to issue its decision." Slotcavage, 745 A.2d at 91 n.3.

The Board acknowledges that its Orders here were issued more than six months after Alston's appellate filings, but asserts that they were not so delayed as

18

to violate due process, particularly where there was no actual prejudice to Alston. We observe that these Orders were issued after Alston had filed a mandamus action in this Court's original jurisdiction requesting that we direct the Board to address his requests for administrative relief. Finally, we note that the certified record initially certified in this matter was, as discussed in Alston I, deficient. However, even though the delays and the state of the record initially certified to this Court are concerning, we must conclude that Alston has not "*in fact* been prejudice[d]" because the Board did not err in revoking Alston's parole due to his admitted conviction for simple assault and resisting arrest, recommitting him as a CPV to serve 18 months backtime, and recalculating his maximum sentence without credit for his time at liberty on parole or the time that he absconded. Glass, 586 A.2d at 372 (emphasis in original); see Gonzalez v. Bd. of Prob. and Parole (Pa. Cmwlth., No. 2090 C.D. 2010, filed July 15, 2011) (concluding that the parolee's due process rights were not violated by a delay in the Board's issuing a decision because the Board's recalculation of the parolee's maximum date was correct).[11, 12]

---

[11] Although Gonzalez is unreported, "an unreported panel decision of this court issued after January 15, 2008" may be cited "for its persuasive value." 210 Pa. Code § 69.414(a).

[12] Even assuming that the Board had erred in recalculating Alston's maximum date by forfeiting his time at liberty on parole, Alston's recalculated maximum date based solely on his recommitment as a TPV in the October 18, 2013 Decision was May 28, 2018, more than three years *after* the Board's October 28, 2014 Order denying Alston's appeal of the February 14, 2014 Decision was issued. Therefore, he was not in danger of reaching his maximum sentence date and having any appeal dismissed as moot due to the Board's delay. Moreover, as Alston acknowledges in his brief to this Court that the 18 months backtime imposed upon him based on his recommitment as a CPV is within the presumptive range, (Alston's Br. at 14), he would have had to serve this 18 months backtime before being eligible for reparole. This means that Alston would have remained confined during and beyond the period of the Board's delay before he would have been even eligible for reparole. Therefore, the delay by the Board in addressing Alston's appeals did not result in an "oppressive incarceration pending [those] appeal[s]." Rosarius, 771 A.2d at 31.

19

## IV.  Conclusion

For the foregoing reasons, we affirm the Board's Orders to the extent that they deny Alston's requests for administrative relief related to the Board's revoking Alston's parole, recommitting Alston as a CPV to serve 18 months backtime based on Alston's admitted convictions for simple assault and resisting arrest, and not giving credit for his time spent at liberty on parole or while he absconded from supervision.  Additionally, we agree with the Board's recalculation of Alston's maximum date to June 12, 2020, as set forth in its April 20, 2016 Decision issued on remand from this Court and its April 28, 2016 supplemental letter.  Accordingly, we vacate the Board's Orders to the extent that they affirmed Alston's maximum date as May 18, 2020, and remand the matter to the Board to modify Alston's maximum date in accordance with the Board's April 20, 2016 Decision and its April 28, 2016 supplemental letter.


_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevan M. Alston, Jr., :
                   Petitioner :
                                :
        v. : No. 1924 C.D. 2014
                                : No. 2042 C.D. 2014
Pennsylvania Board of Probation :
and Parole, :
                   Respondent :

# **O R D E R**

      **NOW**, November 28, 2016, the September 24, 2014 and October 28, 2014 Orders of the Pennsylvania Board of Probation and Parole (Board) are **AFFIRMED** to the extent that they deny Kevan M. Alston, Jr.'s (Alston) requests for administrative relief related to the Board's recommitting Alston as a convicted parole violator to serve 18 months backtime based on Alston's conviction for simple assault and resisting arrest and not giving him credit for his time spent at liberty on parole or while he absconded from supervision. Additionally, because this Court agrees with the Board's recalculation of Alston's maximum date to June 12, 2020, as set forth in its April 20, 2016 Decision issued on remand from this Court and its April 28, 2016 supplemental letter, we **VACATE** the Board's Orders to the extent that they affirmed Alston's maximum date as May 18, 2020, and **REMAND** the matter to the Board to modify Alston's maximum date in accordance with the Board's April 20, 2016 Decision and its April 28, 2016 supplemental letter.

      Jurisdiction relinquished.

 

_____
**RENÉE COHN JUBELIRER, Judge**